W. B. Brooks, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 10991.   Promulgated May 21, 1928.

*John H. Small, Esq.*, for the petitioner.
*J. F. Greaney, Esq.*, for the respondent.

OPINION.

LITTLETON: Petitioner claims that the Commissioner erred (1) in refusing to allow a loss on the destruction of petitioner's Green Spring Valley residence by fire; (2) in refusing to allow a loss on the sale of a residence property in Baltimore; and (3) in determining that certain dividends declared on stock owned by petitioner constituted taxable income to petitioner.

Petitioner's claim for a loss by reason of the fire was based primarily on the March 1, 1913, value of the property destroyed and considerable evidence was introduced in an effort to sustain a valuation of $60,000 for such property as of March 1, 1913. Witnesses called to testify as to such value expressed the opinion that the residence destroyed had such a value but this opinion does not appear to us to be borne out by their testimony with respect to the only sales of such property known to them. The testimony of one of such witnesses appears to be based primarily upon reconstruction cost, although the witness disavowed any intention to testify upon that basis. We have carefully considered the testimony as a whole and it is our opinion that the value of the residence on March 1, 1913, was $45,000 and we have so found. However, under the decision of the Supreme Court in *United States* v. *Flannery*, 268 U. S. 98, it would appear that the March 1, 1913, valuation, being greater than cost, has no bearing upon the amount of deductible loss sustained by the petitioner, since the deduction can not exceed the actual loss sustained. We conclude that under that decision the loss from the fire could not exceed $10,000, the difference between the cost of the property and the amount of insurance realized, plus the salvage value of

34

that which remained. The Board has also held that in computing gain from the sale of a residence, depreciation sustained thereon should not be deducted from the cost or March 1; 1913, value, since such depreciation was not a legal deduction from gross income. *Deposit Trust & Savings Bank, Executor*, v. *Commissioner*, 11 B. T. A. 706. We are of the opinion that the same principle would be here applicable in computing the deductible loss from the destruction of a residence by fire. On the basis of the foregoing, the deductible loss in 1919 would be $10,000, the difference between the cost of the property, $40,000, and the amount of insurance realized, plus the salvage value of that which remained, $30,000.

With respect to the loss claimed on account of the sale of the Baltimore property purchased as a residence in 1896, and so held until 1910 or 1911, from which time it was abandoned as a residence and held for rental purposes and for sale until the date of sale in 1919, the Supreme Court has recently held that a deductible loss may be sustained on account of the sale of such property, *Heiner* v. *Tindle*, 276 U. S. 582. In so deciding, the court held that the basis for computing the amount of the loss would be the difference between the fair market value of the property at the time its status was changed from residence to business property, or the March 1, 1913, value, whichever is lower (where the change took place prior to March 1, 1913), and the sales price.

Since we have found that the fair market value of the property on March 1, 1913, is not in excess of its fair market value when its status was changed in 1910 or 1911 from residence to business property, the 1910 or 1911 value may be disregarded, unless depreciation sustained from 1910 or 1911 to 1913 must be taken into consideration which would serve to reduce the 1910 or 1911 value below the March 1, 1913, value. As to this we are of the opinion that the principle enunciated in *United States* v. *Ludey*, 274 U. S. 295, is applicable and prohibits the deduction of any amount for depreciation during such period. The court there said that in determining the gain from a sale of depreciable property, the depreciation which should be deducted from the cost or March 1, 1913, value is the " aggregate amount which the taxpayer was entitled to deduct in the several years." In the case at bar, the petitioner, an individual, was not required to file an income-tax return prior to March 1, 1913, and, consequently, he was not " entitled to deduct " any depreciation that was sustained on property that was owned by him. This case is to be distinguished from *Noaker Ice Cream Co.*, 9 B. T. A. 1100, wherein the Board held that a corporation having acquired property in 1909 at a cost less than the March 1, 1913, value, should deduct depreciation on such cost for years prior to March 1, 1913, in de-

termining the loss on the disposition thereof, for the reason that corporations were required to file returns prior to March 1, 1913, and, therefore, were entitled to deduct depreciation, whereas the same requirements and rights did not exist with respect to individuals. While it is true that the tax paid by corporations for years from 1909 to 1913 was an excise tax measured by income, the advantage resulting to the corporation through the depreciation deduction was the same before as after March 1, 1913, and the allowable depreciation deductions by corporations in years prior to March 1, 1913, had the same effect in principle as similar deductions in 1913, and subsequent years when the tax required to be paid was denominated an income tax. After March 1, 1913, of course, depreciation must be taken into consideration in the instant case, since the petitioner was then required to make a return of his income and pay a tax thereon and was also entitled to deduct depreciation on the building in question, a depreciable asset which was being used in the production of income.

On the basis of the foregoing principles, the deductible loss in this case is the difference between the fair market value on March 1, 1913, properly depreciated from that date to August 4, 1919, and the sales price. The evidence shows that of the fair market value on March 1, 1913, of $25,000, the part to be apportioned to the building is $15,000, and that to the lot $10,000, and that the building had a useful life of 33 years from March 1, 1913. Depreciation should accordingly be computed on the building on the basis of the foregoing value and estimated life, and the amount determined should be used to reduce the fair market value at March 1, 1913.

Petitioner was the owner of a majority of the capital stock of Sanford & Brooks Co. In each of the years here involved, that company declared dividends of 8 per cent upon its capital stock, which were credited to the accounts of the respective stockholders. The uncontradicted testimony is that it was understood by the directors that such dividends would not be paid until the company was in funds and could spare it for that purpose. All of the stockholders except petitioner were paid their dividends in the year when declared. While the testimony is that petitioner was not paid his dividend in the years of declaration, except $4,287.91 paid in 1921 from dividends declared in that year, there is a total lack of any evidence to establish that these dividends were not available for payment. Furthermore, it appears that from time to time other amounts became due to petitioner from the corporation, such as salary, which were credited to his account and withdrawn as he found necessary. The smaller stockholders drew their dividends. The agreement with respect to deferred payment was the same as

to all of the stockholders. In the absence of some evidence to the contrary, we must assume that the petitioner left his dividends with the corporation for some other reason than that they could not be withdrawn under the limitation placed upon them at the time of declaration. The Commissioner having determined that they were available, and there being no question that if available they were income during each of the years involved, the action of the Commissioner must be approved.

Reviewed by the Board.

> Judgment will be entered on 10 days' notice, under Rule 50.

Trammell and Murdock dissent.

Phillips, dissenting: So far as the prevailing opinion holds that, in determining the loss sustained on the sale of residence property, the original cost thereof is not to be adjusted for depreciation sustained, I dissent upon the grounds set out in the dissenting opinion in *Deposit Trust & Savings Bank, Executor*, 11 B. T. A. 706.

Nor do I concur with the conclusion of the Board that in computing the gain or loss from the sale of the Baltimore residence, which was converted into business property in 1911, no adjustment is to be made for the depreciation which took place between 1911 and 1913. This Board has decided in *Even Realty Co.*, 1 B. T. A. 355, and in succeeding cases that in determining the gain or loss from the sale of property, adjustment was to be made for depreciation. And this was so whether or not there was an income-tax law in effect during the years when the depreciation took place. The reasoning of the Board in the Even Realty Co. decision pursued the same line as that used by the Supreme Court in *United States* v. *Ludey*, 274 U. S. 295, although in the latter case the court limits the adjustment to the " allowable " depreciation or depletion. The court there did not consider, nor was it called upon to consider, what would be the proper adjustment to be made for depreciation or depletion in some year when there was no income-tax law. *Noaker Ice Cream Co.*, 9 B. T. A. 1100. In the latter case the Board pointed out the results which would follow if cost were to be adjusted by deducting depreciation allowed, based upon the March 1, 1913, value, and expressed the opinion that " only by taking into consideration depreciation sustained both prior and subsequent to March 1, 1913, on *cost* can we obtain a true depreciated cost which we can compare with the depreciated March 1, 1913 value."

That case was decided by the Board after the *Ludey* decision and followed the previous decisions of the Board and the consistent and long established practice of the Treasury Department. I know of

nothing which would require us to change the decision there reached, nor do I conceive that the principles there enunciated were contrary to the *Ludey* decision. I do not understand the *Ludey* case to hold that the method of computing gain or loss previously used by the Board and by the Treasury Department was incorrect except to the extent that where, during certain years, the amount of deductible depreciation or depletion was fixed by statute it must be assumed that it was the intent of Congress that only the deductible, and not the sustained, depreciation was to be used for those years. I accordingly dissent from so much of the prevailing opinion as holds that no adjustment is to be made for the depreciation of the Baltimore property which took place between 1911 and 1913.

STERNHAGEN and MORRIS agree with the above dissent.