TRACY V. BUCKWALTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33957. Promulgated September 25, 1930.

*Joseph G. Denny, Jr., Esq.,* for the petitioner.
*B. M. Coon, Esq.,* for the respondent.

OPINION.

Morris: The first issue is with respect to the respondent's failure to allow a deduction for exhaustion of certain patents in the computation of net income for the years 1924 and 1925.

Section 214(a)(8) of the Revenue Acts of 1924 and 1926 provides that:

(a) In computing net income there should be allowed as deductions:

\*      \*      \*      \*      \*      \*      \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

We have found as a fact that the three patents in question had an aggregate March 1, 1913, value of $120,000, upon which exhaustion may be computed provided the petitioner meets the test prescribed in the section aforesaid.

It is the contention of the respondent that the patents were not used in " the trade or business " of the petitioner and, therefore, no

exhaustion should be allowed.   In so far as Patents Nos. 981,975 and 987,854 are concerned, we believe the respondent is entirely correct. The petitioner was employed by the Pennsylvania Railroad for a number of years as a salaried employee, during which time he, in the discharge of his duties as such employee, invented the tie truck and axle bearing embodied in those two patents.   Pursuant to his contract of employment with the railroad company, he retained the ownership of those patents and he executed licenses to his employer, without the payment of royalty.   In 1916 the petitioner entered the employ of the Timken Roller Bearing Co. as a salaried employee and, according to his contract of employment with that company, he was expressly prohibited from exploiting his patents.   It does not appear from the record that he has ever, at any time, received royalties upon these two patents or that they were ever licensed to anyone except his employer.   The mere fact that the patents were used by the corporations with which he was employed does not, in our opinion, constitute use in the petitioner's trade or business within the meaning of the statute, and, therefore, with respect to those two patents he is not entitled to deduct exhaustion. We entertain a different view, however, with respect to Patent No. 1,024,675, because it appears that the petitioner did grant a license thereon to others than his employer and that he had received therefrom in excess of $100,000 in royalties in the course of several years. We, therefore, are of the opinion that he is entitled to a deduction for exhaustion of this patent based upon the March 1, 1913, value of his one-half interest therein.

The second issue relates to the failure of the respondent to permit a deduction in 1924 of a loss arising from the destruction of an automobile by fire.   Section 214(a)(6) of the Revenue Act of 1924 permits the deduction of:

(6) Losses sustained during the taxable year of property not connected with the trade or business * * * if arising from fires, * * * and if not compensated for by insurance or otherwise. * * *

The petitioner testified that he assigned a value of $800 to this car when it was destroyed and that that value was based upon the fact that a similar car, although not as old, sold for $1,000 a few years previously.   The petitioner was asked what a car of this type would have brought in a secondhand market, and he said that, although he had made no investigation his estimate would be somewhere around $600.   But, even this figure strikes us as somewhat optimistic.   At least we are not willing to accept it as a proper statement of the market value.   It is true that he might have found a dealer in automobiles who would have been willing to have allowed him considerably more as a " trade-in value " upon the purchase of

a new car, but, we believe, considering all the facts and circumstances, that $250 is a liberal statement of what such a car would have brought upon resale in the open market. Deducting the salvage value of $25 from that value, the petitioner is entitled to deduct a loss of $225 in the computation of net income for 1924.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

----

SMITH, dissenting: I dissent from so much of the opinion in this case as denies to the taxpayer any deduction for the exhaustion of Patents Nos. 981,975 and 987,854 upon the ground that they were not " used in the trade or business " of the petitioner. The respondent disallowed the deduction of any amounts for exhaustion of the patents " for the reason that no valuation or cost of said patents has been furnished " as stated in the deficiency notice. The petitioner testified upon this point as follows:

Now, the inference might be drawn as to why I have not made any effort to sell these patents personally. Some effort was made shortly after I went with Timken. I thought it would be an excellent time now to capitalize on some of these patents I had developed while I was in the employ of the Pennsylvania Railroad, but I soon ran up against this proposition. One of the executives of a large truck company whom I approached in connection with the use of a patent not confined to the bearings which he could use very well on his motor trucks, and he stated something on this order; he says: " You must not think for an instant that you can come in here and expect to exact a royalty from me on account of the use of a radiator patent, when I am paying your company, who is employing you, twenty five dollars for each truck for bearings." Well, I recognized that was an extremely forceful argument, and after giving it due consideration over a considerable period of time, and talking it over with our other executives, I found that it was impracticable—utterly impracticable for me to attempt to capitalize these patents, but rather that I should use them to extend the Timken Company's business. We have not made any direct contracts with customers, but they have been led to understand that any use that they wish to make of patents covered by my patents could be made, as long as they used Timken bearings in their product. I am quite convinced that except for that condition, I would be in a position to realize quite handsomely on these various patents and would have well reached the figures that have been brought out in today's hearing.

Q. Have you indirectly profited from the utilization of these patented inventions by other companies?

A. Yes, I have indirectly profited, in addition to a salary the company pays me, they have been in the habit for some ten years or thereabouts of granting a bonus at the termination of the year, which is a substantial percentage of the salary, which I am given to understand covers all of the intangible things, such as the use of patents, entertainment, membership in clubs that I do not use personally, but which I keep up for the entertainment of customers. * * *

What was petitioner's trade or business in 1924 and 1925? Clearly, he was engaged as an officer of the Timken Roller Bearing Co. He

had made a name for himself as an inventor and was valuable to his employer by reason of the patents which he controlled. His position and at least a portion of his compensation was directly attributable to these patents. If the petitioner had been engaged in no business in 1924 and 1925, but had simply received royalties upon his inventions, I think he would be entitled to a deduction for the exhaustion of them. His income was in part derived from them. I can not see how it was any less derived from them when employed in the manner in which the petitioner was employed.

LOVE and SEAWELL agree with this dissent.