E. C. O'REAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32335.   Promulgated July 18, 1933.

*Elwood Hamilton, Esq.,* and *J. C. W. Beckham, Esq.,* for the petitioner.

*J. A. Lyons, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies of $16,880.04, $2,281.58, $427.85 and $319.16 in the petitioner's income tax for the calendar years 1922, 1923, 1924 and 1925, respectively. The petitioner has assigned the following errors:

(1) The Commissioner of Internal Revenue erroneously included in income $50,000 received by the petitioner for a two-thirds interest in the practice of his profession, to-wit, attorney at law, for the year 1922.

(2) The Commissioner of Internal Revenue erroneously refused to allow the petitioner a fire loss of $53,313.54 for the year 1922.

(3) The Commissioner erroneously reduced depreciation $1,986.17 and refused to allow $1,200 expense of operating an automobile in business for 1924.

Other errors were assigned but are no longer urged.

The material facts are as follows:

The petitioner is an individual who resides near Frankfort, Kentucky. In 1900 he became a member of the Court of Appeals of Kentucky. In December, 1911, he resigned from the Court and resumed the practice of law at Frankfort.

On January 2, 1922, the petitioner entered into an agreement with W. D. Fowler which provided that the two should become partners in the practice of the law. The petitioner was to have a two-thirds interest in the firm and Fowler a one-third interest, including all fees thereafter collected upon new or former employments of either on which any additional work was to be done. The agreement provided in part as follows:

> As further differential in division of fees and income of the firm business, due to the conceded excess value of good will and unearned fees of said O'Rear put into the firm, said Fowler agrees to pay said O'Rear Twenty-five ($25,000) thousand dollars * * *.

On June 1, 1922, the petitioner entered into an agreement with William L. Wallace, which provided that Wallace should become a member of the law firm of O'Rear and Fowler and should receive one-third of the income from the law business of that firm and should bear a like portion of its expenses. The partnership between O'Rear and Wallace was to continue for five years unless sooner dissolved by the consent of Wallace or the death of either. This agreement provided in part as follows:

> Said Wallace, as a differential in division of fees and income of the said firm, due to the conceded excess value of good will and unearned fees of said O'Rear put into the firm, is to pay said O'Rear twenty-five thousand ($25,000) dollars * * *.

In 1922 Fowler and Wallace each paid the petitioner $25,000 as provided in the agreements. The petitioner did not report in his income-tax return for 1922 the $50,000 received from Fowler and Wallace. The Commissioner included this amount in his income for that year, with the explanation that the amount represented the estimated present value in 1922 of a two-thirds interest in the petitioner's expected future profits from his profession.

In 1922 the petitioner's house was almost completely destroyed by fire, together with most of its contents. The house was insured for $15,000 and the contents were insured for $6,000. The petitioner received these amounts as the only compensation for his loss. On his return for 1922 the petitioner claimed a deduction of $53,287.26 as his loss on his house and its contents from fire. The Commissioner disallowed all of this loss except $1,386.18 on household goods. The cost of the property acquired after February 28, 1913,

added to the fair market value on March 1, 1913, of the property acquired prior thereto, all of which property was destroyed by the fire, was $55,000.

During 1924 the petitioner spent at least $600 in operating an automobile in connection with his law practice away from his office in Frankfort, Kentucky. The Commissioner disallowed a deduction of $1,200 claimed as cost of operating this automobile.

We know of no theory upon which the petitioner can escape taxation on the $50,000 which he received in 1922 from Fowler and Wallace. The entire amount was, in our opinion, income, gain or profit within the meaning of section 213 (a) of the Revenue Act of 1921. The act provides for no offsetting deduction. The petitioner in his brief contends that "the sale of the right to share in the business and profits of a law practice is the sale of a capital asset, and any profit therefrom should be computed on that basis." He says the asset sold was "good will" or "more accurately * * * the good will of his business, with the right to share in future profits." Next he claims that the good will had a value on March 1, 1913, greater than the amount realized from its sale in 1922. Therefore he concludes there was no gain to report in 1922. This argument is specious as applied to the facts in this case.

In the first place it is at least doubtful whether a professional man can sell or dispose of any good will which may attach to his practice except perhaps by contracting to refrain from practicing. Cf. *Menefee* v. *Rankins*, 158 Ky. 78; 164 S.W. 365; *Cowan* v. *Fairbrother*, 118 N.C. 406; 24 S.E. 212; *Brown* v. *Benzinger*, 118 Md. 29; 84 Atl. 79; *Kremelberg* v. *Thompson*, 87 N.J. Eq. 655; 103 Atl. 523. The petitioner no doubt enjoyed a good reputation as an able lawyer. This he had built up through the skill with which he rendered personal services to clients. It was probably of value to him. But it attached to his person. He could not transfer it piecemeal to two others. Cf. *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U.S. 436; *McFarlan* v. *Stewart*, 2 Watts, (Pa.) 111. They could not acquire part of his reputation or ability. Furthermore the proof in this case does not justify or permit a separate valuation of any good will or other intangible asset which attached to the petitioner's practice of law on March 1, 1913. The value of any such intangible asset would depend upon the existence of an excess of his earnings over and above proper compensation for the services which he actually rendered. Cf. *Victor J. McQuade*, 4 B.T.A. 837. So far as we know there was no such excess prior to March 1, 1913. But the most damaging defect in the petitioner's argument is the fact that the portions of the agreement with which we are concerned do not even purport to be sales contracts. They do not have the effect of sales contracts. If the petitioner had any "good will" theretofore, obviously he disposed of none of it by entering into these contracts. Thus the provisions of the statutes relating to gain or loss upon the

sale or disposition of property do not apply. He was not to refrain from practicing; on the contrary, he was to use every talent and every asset which he had for practicing law successfully. The agreement recognized that he would contribute more to the success of the firm than the others and therefore he should be favored in some way in the compensation which he would receive. The desired result might have been accomplished by a provision that he should have more than one third of the annual earnings. Instead he agreed, in consideration of an immediate cash payment, to relinquish his right to a part of future earnings. These payments were income to him. The contracts called them " a differential in division of fees and income of the firm business." Compensation for personal services is income regardless of whether it is paid directly by clients or whether it is received through an arrangement with partners whereby they advance certain amounts for the privilege of taking a larger share of the partnership profits than their personal contribution would otherwise justify.

The petitioner really seeks to capitalize his reputation, ability, industry, and prospects for rendering personal services for profit on March 1, 1913. On the same theory every professional man and probably every other person might be entitled to offset his income after March 1, 1913, with some part of his prospective worth on that date. We do not think Congress intended any such capitalization.

The deduction for fire loss must be computed upon the cost of the property acquired subsequent to February 28, 1913, and upon the fair market value on March 1, 1913, of the property acquired before that date. Sec. 214(a) (6), Revenue Act of 1921. In *Tracy V. Buckwalter*, 20 B.T.A. 1005, (affirmed on other points 61 Fed. (2d) 571) the Board erred in using value at the time of destruction. The cost and value should not be reduced by depreciation or obsolescence. *Deposit Trust & Savings Bank, Executor*, 11 B.T.A. 706; *W. B. Brooks*, 12 B.T.A. 31, affirmed on other points, 35 Fed. (2d) 178. Cf. *J. A. Talbot*, 23 B.T.A. 792. We have found the total cost and March 1, 1913, value from a consideration of all of the evidence. A separate finding for each is not possible, but under the Board's decisions our finding is adequate for a decision of the case.

The petitioner failed to show the cost of his automobile, when it was purchased, or the amount of depreciation applicable to the year 1924. He drove it on his daily trips between his home in the country and his office in Frankfort. The part of the cost, upkeep, and operation allocable to this use is not deductible from his income, but represents a personal expense. *Frank H. Sullivan*, 1 B.T.A. 93, and many later cases. Some of these expenditures were deductible from income because to some extent the car was used in the petitioner's business. We are unable to make an accurate allocation of

the expense of operation. The amount allowed has been approximated, in accordance with the opinion of the court in *Cohan* v. *Commissioner*, 39 Fed. (2d) 540.

*Decision will be entered under Rule 50.*