LaVerne M. Poast v. Commissioner. Worthington C. Lent v. Commissioner.
LaVerne Poast v. Commissioner
Docket Nos. 27825, 27826.
United States Tax Court
1952 Tax Ct. Memo LEXIS 346; 11 T.C.M. (CCH) 51; T.C.M. (RIA) 52015; January 24, 1952
Meredith M. Daubin, Esq., Munsey Bldg., Washington, D.C., for the petitioner in Docket No. 27825, and Harold G. Cowgill, Esq., 816 Connecticut Ave., Washington, D. C., for the petitioner in Docket No. 27826. E. M. Woolf, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined the following deficiencies in the income tax of petitioners: LaVerne M. Poast (Docket No. 27825)
1946
$1,228.78
1947
1,017.98
Worthington C. Lent (Docket No. 27826)
1946
$3,974.17
1947
1,978.36 These cases were consolidated for hearing. Petitioner Poast claims an overpayment of income tax for the year 1946. The principal question is whether income of the partnership of Lent and Poast in the amount of $5,937.25 for 1946 and $3,683.18 for 1947 is taxable to petitioner *347 Poast or to petitioner Lent. If it is held that this income is taxable to Poast, then it will become necessary to pass upon a contention, made by him in the alternative, that he is entitled to a loss deduction in 1947. Findings of Fact The petitioners filed their individual income tax returns for the years 1946 and 1947 with the collector of internal revenue, Baltimore, Maryland. On February 1, 1944, petitioner Lent, as a sole proprietor, established a consulting radio engineering business with offices in Washington, D.C. He successfully conducted this business until January 1, 1946, when he entered into a partnership with petitioner Poast to continue the business at the same location under the firm name of Lent and Poast. The partnership agreement was oral and the partnership continued until it was dissolved by mutual agreement effective October 31, 1947. Petitioner Poast was an employee of petitioner Lent during 1944, working part time as an engineer at an hourly rate of pay. He continued to be an employee during the year 1945 and for that year received a salary of $6,000. At the commencement of the partnership Lent contributed all of the tangible and intangible assets *348 of his established proprietorship business, including work in progress. Lent seldom had written agreements with clients and at the time the partnership was formed there were no definite contracts which would continue on into the year 1946. The only contribution made by Poast to the partnership was his personal services. Poast and Lent formally dissolved the partnership on October 31, 1947 by an executed agreement entitled "Agreement for Dissolution of Partnership" signed by them on April 12, 1948. This agreement reads in part as follows: "WITNESSETH: "WHEREAS, a co-partnership heretofore existed during the period from January 1, 1946, through October 31, 1947, between Lent and Poast, engaged in the business of radio engineering in Washington, D.C., under the firm name and style of Lent and Poast; and "WHEREAS, a further continuation of said co-partnership is no longer desired and the parties, by mutual consent, have agreed to a dissolution thereof; and "WHEREAS, at the commencement of said co-partnership Lent delivered to said co-partnership to be used as part of its assets certain of his own furniture and fixtures of the book value of $6,720.96; and in consideration therefor *349 Poast agreed to pay Lent 8 1/3 per cent of said book value each year commencing with the calendar year 1946 for a period of three years; and pursuant to such agreement Poast did pay to Lent only the sum of $560.08, and no more, representing 8 1/3 per cent of the said book value for the year 1946; and * * *
"WHEREAS, the net earnings of the co-partnership have been distributable by agreement on the following basis: "(a) Of all net earnings during a calendar year, Lent has been entitled to receive a maximum of 75 per cent thereof, and Poast has been entitled to receive a minimum of 25 per cent thereof; and "(b) For each $5,000.00 of net earnings in excess of $20,000.00 and under $50,000.00 each calendar year, Poast has been entitled to receive, over and above the aforesaid 25 per cent thereof, an additional 2 1/2 per cent of the entire net earnings, and for any excess fractional part of any such $5,000.00 of net earnings, Poast has been entitled to receive an additional 2 1/2 per cent of such fractional part; and * * *
"WHEREAS, prior to and at the commencement of the copartnership Lent was engaged individually as proprietor of a going business with an established good *350 will; and in consideration for the right to participate during the existence of the copartnership in its earnings on the basis set forth above, which earnings were substantially enhanced as a result of said good will established by Lent individually as aforesaid, Poast agreed to pay Lent each year for three years commencing with the calendar year 1946 a sum equal to 10 per cent of the net earnings of the co-partnership; and "WHEREAS, Poast has paid Lent the sum of $5,937.25 representing such 10 per cent payment for the calendar year 1946; and pursuant to such agreement there will be due and owing from Poast to Lent a sum equal to 10 per cent of all the net earnings collected from January 1, 1947, to the final termination and liquidation of the co-partnership; and * * *
"NOW, THEREFORE, it is hereby mutually agreed between Lent and Poast as follows: "1. The said co-partnership ceased to exist as of October 31, 1947. * * *
"4. Poast hereby delivers, assigns and transfers absolutely to Lent all of Poast's right, title and interest to and in the business of the co-partnership hereby dissolved, and to and in the moneys in the bank, good will, trade marks, trade names, *351 stock in trade, contracts, accounts receivable and to and in all furniture, fixtures, and all other tangible property owned or used by or in possession or custody of the co-partnership on October 31, 1947, and to and in all other assets whatsoever belonging to the co-partnership." * * *
The final dissolution and settlement of the affairs of Lent and Poast based on the termination of the partnership in October, 1947, made no allowance to Poast for any relinquishment or transfer back to Lent of good will or interest in the business, other than the refund of $560.08, noted below, in connection with the furniture and fixtures. Any good will that the partnership had was retained by Lent. The gross income of the business when operated as a sole proprietorship was $34,788.20 for 1944 and $52,857.31 for 1945. The gross income of the partnership was $88,787.98 for 1946, and $60,751.23 for the ten months the partnership operated in 1947. For the last two months of 1947 the gross income of the business was $1,997, and for the year 1948 the gross income amounted to $54,137.26. The net income of the partnership for the year 1946 amounted to $59,372.48. A distribution of the 1946 earnings *352 of the partnership was made on December 31, 1946, as follows: Lent
$35,623.49
Poast
23,748.99
$59,372.48 From the distribution received by him Poast paid Lent the following amounts: 10% of net earnings
$5,937.25
8 1/3% book value of furniture and fix-
tures
560.08
Poast received from Lent a refund of the 1946 payment of $560.08 in connection with the final settlement of the affairs of the partnership on April 12, 1948. That refund related exclusively to the payment made in 1946 by Poast representing 8 1/3 per cent of the book value of furniture and fixtures used in the enterprise. The net income of the partnership for the year 1947, amounting to $36,831.79, was distributed as follows: Poast
Lent
$12,016.13
$24,815.66
Less 10% net earnings
3,683.18
3,683.18
Additional payment from Poast
Net distribution
$ 8,332.95
$28,498.84
In the original income tax return filed by petitioner Poast for the year 1946, he reported his distributable share of the income of the partnership of Lent and Poast for that year to be $23,748.99, and in his return for 1947, he reported his distributable share of *353 the income of this partnership to be $8,332.95. On June 8, 1948 he filed with the collector of internal revenue at Baltimore a claim for refund in the amount of $1,739.75 for the year 1946 and an amended return for that year in which he reported his distributable share of partnership income for 1946 to be $17,811.74. In income tax returns filed by Lent he reported his distributable share of the partnership income for 1946 to be $35,623.49 and for 1947 to be $24,815.66. Timely income tax returns were not filed for the partnership for the years 1946 and 1947. Partnership returns for these years were filed on January 26, 1949, by Lent. These returns were marked "Delinquent" and were prepared and filed only after an examination by an internal revenue agent of the income of Lent for 1946 and 1947. On these returns the distributable shares of the partners were reported as follows: 1946
1947
Lent
$35,623.49
$24,815.66
Poast
23,748.99
12,016.13
Opinion RAUM, Judge: In determining the deficiencies in these proceedings, the respondent has taken the inconsistent positions that the amounts in controversy, $5,937.25 for 1946 and $3,683.18 for 1947, are taxable *354 as ordinary income for these years to each of the petitioners. On brief he urges that if we should hold that these amounts constitute capital gain to Lent, then they were distributed to Poast and are taxable as ordinary income to him. He concedes that if they are taxable as ordinary income to Lent, they are not includible in the taxable income of Poast. Petitioner Lent contends that under the oral partnership agreement of January 1, 1946, he sold Poast a right to share in future profits of the business and that the receipts from the sale of this right are classifiable as receipts from the sale of a capital asset subject to the provisions of Section 117 of the Internal Revenue Code. Prior to the time the partnership of Lent and Poast was organized on January 1, 1946, Lent had successfully carried on the radio consulting business for a period of approximately two years and had built up substantial good will. It resulted, however, from personal services rendered by him to clients and attached to him personally; it was not the sort of thing that could be effectively transferred to another in the circumstances of this case. That Poast never acquired any interest *355 in the good will of the business or any interest in the partnership reflecting such good will is apparent from the following testimony by Lent at the trial: "Q. I will ask this question, then: Colonel Lent, upon the dissolution in regard to the final settlement, Exhibit H-1, what did you pay Mr. Poast for the good will or the interest in your business? Did you pay him anything? "A. No. I did not pay him anything. He bought a right to participate. He had not paid for his interest. He never did complete his payment for his interest. "Q. But you had at the termination of the partnership all that you had prior to the entrance into the partnership in connection with your business, did you not, as far as your own right to participate and engage in the practice as an individual consulting radio engineer? "A. Yes, and Mr. Poast had the same right to engage as an individual if he wanted to do it. He did not surrender any of his rights as an individual. "THE COURT: Would you say that the good will of the partnership remained with you as an individual after the - "THE WITNESS: I would say that it was the only good will that the partnership ever had, that I put it in, and that I naturally *356 retained it, that Mr. Poast had the right to participate and enjoy a greater earning because of that good will with his association; and had he gone through and completed his payments and stayed with me past the three year period, he by that time might have got to the point where he enjoyed the same amount of good will by his association. "THE COURT: Then you would say that he was not by these payments here purchasing good will as much as he was purchasing the right to participate in the earnings of the enterprise? "THE WITNESS: That is right, and the opportunity to build up his own stature as a consultant which would accrue to him in good will over a period of time. Without the association with me he might or might not have been able to do that. That, to me, was tangible." The foregoing discloses that the good will was attached to Lent personally, and could not have been the subject of a transfer in whole or in part to Poast. When the partnership was terminated, such good will by its very nature remained with Lent. That Poast had no interest in it is confirmed by the fact that he was paid nothing for it on dissolution. And, when the partnership was formed, the partners recognized *357 that a portion of the earnings was attributable to the good will and made arrangements to have Lent's share of the profits increased by ten per cent to reflect that portion of the earnings. That in substance was the true nature of the transaction, even though it took the form of a purported undertaking by Poast to pay Lent ten per cent of the profits. The net result of the ten per cent provision was to increase Lent's distributable share and decrease the distributable share of Poast. Nor is this result altered by the fact that the partners understood that under the provisions of their agreement the twenty-five per cent share was to be distributed to Poast before he made the ten per cent payment to Lent. The distributive share of each partner was the net amount of earnings each was entitled to retain after giving effect to all provisions of the partnership agreement. Poast was not entitled to retain the amounts of $5,937.25 and $3,683.15 representing ten per cent of the partnership's net earnings for the years 1946 and 1947, and these amounts do not constitute part of his taxable income for those years. They were received by Lent and are taxable to him. Cf. E. C. O'Rear, 28 B.T.A. 698, *358 affirmed, 80 Fed. (2d) 473 (C.A. 6). In Docket 27825 decision will be entered under Rule 50. In Docket 27826 decision will be entered for the respondent.