William and Jeanne Auerbacher v. Commissioner.
Auerbacher v. Commissioner
Docket No. 51196.
United States Tax Court
T.C. Memo 1956-218; 1956 Tax Ct. Memo LEXIS 74; 15 T.C.M. (CCH) 1147; T.C.M. (RIA) 56218; September 27, 1956
*74 Respondent partially disallowed deductions for automobile expense and charitable contributions and disallowed entire deductions claimed as entertainment and travel expense. Held: Petitioners entitled to deductions for entertainment and travel expense in amounts determined under application of the rule of Cohan v. Commissioner, 39 Fed. (2d) 540. Cost of clothing worn by Jeanne not allowed as a business expense, and respondent's determinations as to deductions for automobile usage and rental property expenses not disturbed. Joseph Shefner, Esq., for the petitioners. Fayette G. Taylor, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in the income tax of the petitioners for the year 1949 in the amount of $1,013.42. The questions presented relate to the action of the respondent in disallowing deductions claimed by petitioners on their income tax returns for the year 1949 in the amount of $350 claimed as travel expenses incurred by petitioner Jeanne Auerbacher in excess of the amount reimbursed therefor by her employer; $1,660.67 of a total of $2,158.28 claimed as operational expense and depreciation on an automobile alleged to have been used by petitioner William Auerbacher in connection with his business as a real estate broker and the owner of certain rental properties; and $2,303.36 entertainment expense claimed by William in connection with his business. Two other minor adjustments determined by respondent and relating to contributions and interest payments have either not been contested or are deemed abandoned by petitioners. Petitioners claimed additional deductions for expenses alleged to have been incurred *76 by Jeanne for travel, entertainment, parties and gifts to fellow employees, and for certain expenditures for personal clothing which Jeanne claims was necessary to her position as buyer-manager of a department of a large department store devoted to fashionable women's clothing. Findings of Fact The petitioners, William and Jeanne Auerbacher, are husband and wife and reside in Minneapolis, Minnesota. They filed a joint income tax return for the calendar year 1949 with the then collector of internal revenue for the district of Minnesota. In 1949, and for several years prior thereto, Jeanne was employed by the Dayton Company, a large department store in Minneapolis, as the buyer-manager of the Oval Room, a department of the store dealing in fashionable women's clothing, for which employment she received a salary in 1949 in the amount of $10,336.49. During 1949 Jeanne made two trips to Chicago, two to Los Angeles, and four to New York for the purpose of buying merchandise to be sold in the Oval Room. The Dayton Company paid Jeanne's transportation costs to and from her destination and gave her an expense allowance of $14 per day while enroute. While at destination she was given *77 an expense allowance of $17 per day in Chicago and New York, and $20 per day in Los Angeles. Each of the Chicago trips occupied one day in travel and at destination. The Los Angeles trips occupied six and eight days, respectively, three days of each trip being spent in travel status. The New York trips occupied 10, 31, 11 and 31 days, respectively, with no time indicated for travel as she apparently went to New York by plane. A total of 99 days was spent by Jeanne on these buying trips, 83 of them on the trips to New York. Jeanne kept no records of her actual expenditures while on buying trips. It is estimated that while in New York such expenditures included $11 to $12 per day for a hotel room, $1 to $1.25 for breakfasts, $2 for lunches and from $4 to $4.50 for her dinners exclusive of tips and other miscellaneous expenses. The $17 per day given her by the Dayton Company was not sufficient to cover her traveling expenses (including the entire amount expended for food and lodging) while on the buying trips to New York. Jeanne expended at least $250 in 1949 for traveling expenses while on business trips in excess of the amount reimbursed therefor by the Dayton Company. While in *78 New York Jeanne was frequently entertained by manufacturers and their representatives. In turn, she would reciprocate by sending flowers or other gifts to these persons or their families. Jeanne also entertained other buyers, market supervisors and fashion editors at lunch or dinner and frequently went to the theatre with some of them. Jeanne's salary was not based upon commissions and these entertaining activities were not required by the Dayton Company. Jeanne thought them important to her since they gave her an opportunity to exchange ideas and to promote the prestige of the Oval Room. During 1949, Jeanne gave Easter presents and Christmas parties for the employees of her department and also occasionally entertained business friends in the Dayton Company dining room. These activities were not required of her by the Dayton Company. Jeanne also maintained a large personal wardrobe of Oval Room clothes. This clothing was not a uniform required by the Dayton Company but was expensive clothing which could be worn away from work. William Auerbacher was a real estate broker in Minneapolis. During the year 1949 he received commissions in the total amount of $980 for the sale of two *79 pieces of property. He also worked on the sale of some five or six other properties, sales of which did not materialize or were consumated in later years. Petitioners (whether William or Jeanne jointly or individually is not clear) also owned four pieces of real estate which William managed and from which they obtained rental income during the year 1949 in the gross amount of $7,866.13, or the net amount of $4,178.77 after deductions for depreciation, repairs and other expenses, including real estate taxes, water, and removal of ashes. He maintained offices at 1205 Washington Avenue, N., apparently located in one of the rental properties owned by petitioners at 1201-5 Washington Avenue, N. [1]
During 1949 William owned a Packard automobile, purchased in 1948 at a cost of $4,264, which he used for both *80 personal and business purposes, including commuting between his home and office, going to lunch at the Standard Club, taking his wife to the Dayton Company and to the airport, and to visit his rental properties, properties he was attempting to sell, and business clients. For depreciation purposes this automobile had an estimated useful life of four years. On their income tax return for 1949 petitioners claimed 90 per cent of the automobile expenses and depreciation, or $2,158.28, as business expenses. Respondent allowed a deduction of $497.61 and disallowed the remaining portion claimed. William was a member of the Standard Club in Minneapolis, a social club. In 1949, he frequently ate lunch at the club and played bridge there afterwards. He sometimes took his wife to dinner at the club on Sundays and at times entertained clients there as well as at other restaurants. During 1949 William paid $1,120.22 for membership dues and services at the club, including charges for bridge games. The entire Standard Club expenses were a part of the entertainment expense deduction claimed by petitioners on their 1949 income tax return. William kept an account book purporting to represent his *81 personal and business expenses in 1949. The accounts are not supported by underlying invoices, bills or receipts and are so inadequate, confusing and lacking in sufficient information as to make a proper analysis or allocation impossible. Some of the charges are admittedly arbitrary estimates as for example, under a column headed "gas, oil, car washing and storage," William each month placed an estimated amount of $90, and under a column variously headed "Minor cash layout," "Bus. expense," "Entertainment, cigars,… (indecipherable), "Lunch expense, entertainment, Cigars," and "Entertainment, lunch, cigars, drinks, etc.," he each month placed an arbitrary amount of $75, as well as other amounts including Standard Club expenses and purchases from cigar and liquor dealers. The aggregate of these arbitrary amounts were included in petitioners' claimed deductions on their 1949 income tax returns as automobile and entertainment expenses. Respondent has allowed petitioners all those expenses shown on the accounts maintained by William as attributable to the rental property. William incurred business expenses for the entertainment of clients and customers in 1949 in the amount of $100. *82 Opinion The questions presented involve the correctness of respondent's action in disallowing certain deductions claimed by petitioners on their income tax return for 1949, for travel, automobile expenses and depreciation, and for entertainment expenses, as well as certain additional amounts claimed as having been expended by Jeanne for travel, entertainment, gifts to fellow employees and for personal clothing, and by William for maintenance of rental properties. The principle statutes involved are sections 23(a)(1)(A) and 23(a)(2) of the Internal Revenue Code of 1939 set forth in the margin. [2]
*83 The expenditures involved arose out of separate activities of each of the petitioners. Accordingly we will first consider the deductions claimed on account of the activities of Jeanne. Jeanne - Travel Expenses In connection with her employment as the manager and buyer of the Oval Room, a department of the Dayton Company, a large department store located in Minneapolis, dealing in fashionable women's clothing, Jeanne made trips to New York, Chicago, and Los Angeles for the purpose of buying merchandise to be sold in the Oval Room. These trips occupied a total of 99 days, 83 of which were spent in New York. The Dayton Company paid her transportation costs to and from her destination and gave her an expense allowance of $14 per day while enroute, and an allowance of $17 per day while in New York and Chicago and $20 per day while in Los Angeles. Jeanne kept no record of her actual expenditures while on any of these trips. On her tax return she represented that she had expended $350 in excess of the amount reimbursed by her employer. Respondent disallowed this amount for lack of substantiation. At the hearing she testified she had spent an average of at least $10 per day, or a total *84 of $990 in excess of the amount reimbursed by the Dayton Company. Since no evidence other than the estimate was offered as to her actual expenditures on the trips to Chicago and Los Angeles, she has not shown that she is entitled to any deduction for travel expenses by reason of her trips to those cities and no further consideration thereof is deemed necessary. While she kept no records of her expenditures Jeanne testified that while in New York her hotel room cost her from $11 to $12 per day, that she generally paid $1.25 for her breakfasts, $2 for her lunches and $4 to $4.50 for steak dinners, which she enjoyed and generally indulged in, exclusive of tips estimated to be 15 per cent of the cost of the meal, and exclusive of other incidental expenses. The question presented is one of fact to be determined from all the evidence. We are satisfied that the $17 per day allowance given Jeanne by the Dayton Company was not sufficient to cover all her traveling expenses (including the entire amount expended for food and lodging) while on her buying trips to New York, and have so found. Exercising our best judgment, based on the entire record, we have found that Jeanne expended at least *85 $250 in 1949 for traveling expenses while on business trips in excess of the amount reimbursed therefor by her employer. Accordingly we hold that petitioners are entitled to deduct this amount from their gross income for the year 1949. Section 23(a)(1)(A), Internal Revenue Code of 1939; Cohan v. Commissioner, 39 Fed. (2d) 540. Jeanne - Entertainment and Gifts We next consider whether petitioners are entitled to any deduction for expenditures made by Jeanne for entertainment and gifts. No record was kept of any of these and no separate estimate was made by Jeanne as to her entertaining expenses while on buying trips. The latter expenditures were apparently included in her estimated traveling expenses of $10 per day in excess of reimbursement. She also estimated that she spent $20 per year on Easter gifts and $300 per year on Christmas parties for fellow employees of the Oval Room, and $50 per year on lunches for business friends or customers in the Dayton Company dining room. Petitioners have failed to establish that such expenditures were ordinary or necessary within the meaning of section 23(a)(1)(A) or (a)(2) of the Internal Revenue Code of 1939. Jeanne was employed *86 on a salary basis and there is no showing that any of these expenditures were required of her by the Dayton Company. On the contrary, she herself testified "As a matter of fact, my firm does not require me to do those things. They are entirely * * *. This is completely done on my own volition." Even though these expenditures may have contributed to the prestige of the Oval Room and to the morale of the employes working under her, there is no showing that any direct business benefits could reasonably be expected to flow to Jeanne from such entertainment. Petitioners are not entitled to any deduction from gross income in the year 1949 based upon Jeanne's expenditures for entertainment and gifts. Jeanne - Clothing We next consider whether petitioners were entitled to any deduction for the cost of clothing worn by Jeanne, which she claimed was necessary to her position as manager and buyer of the Oval Room. No claim therefor was made on petitioners' return. At the hearing Jeanne estimated, without itemization or corroboration, that she spent from $1,000 to $1,500 more per year for clothing due to her position than she would normally have spent if she were not in the fashion business, *87 that this clothing was of the type handled by the Oval Room and that the wearing of such clothing by her influenced customers and increased the prestige and sales of the Oval Room. The clothing worn by Jeanne, for the cost of which she seeks deduction, was not specifically required of her by the Dayton Company nor used solely in the conduct of its business, but were articles adaptable to general and continued wear at work or on the street. The attitude of Jeanne with respect to this, as well as all her expenditures for which deduction is sought, may be summed up in her testimony that "The Oval Room and its aura demands a given modus of living, which I like to indulge in." Jeanne's expenditures for clothing are not only lacking in substantiation but were of a personal nature and therefore are not deductible. Cf. Louis M. Roth, 17 T.C. 1450; Louis Drill, 8 T.C. 902. Olivia deHavilland Goodrich, 20 T.C. 323; relied upon by petitioners, is clearly distinguishable. The expenditures there involved related to clothing worn by the petitioner, an actress, in particular moving picture productions or for publicity purposes, and was not clothing for continued *88 and general use. We next consider the deductions claimed on account of the activities of William. William - Upkeep and Repair of Rental Properties Although there was some attempt by William to establish additional expenses for repairs and upkeep of his rental properties in an amount estimated as $600 to $1,000, the evidence thereon, consisting largely of cash register receipts bearing no date with respect to the year of payment and no indication as to the particular articles for which the payments were made, is too indefinite to justify any deduction in excess of the amount already allowed by respondent. It is also to be noted that respondent's allowance included a number of items paid for in cash. Accordingly we hold that petitioners have not shown themselves entitled to any amount, in excess of the amount allowed by respondent, for repairs and upkeep of rental properties. William - Entertainment Expenses Petitioners claimed a deduction on their 1949 return in the amount of $2,303.36 as entertainment expenses alleged to have been incurred by William in connection with his business as a real estate broker. Respondent disallowed the entire amount. Included in such amount *89 is a flat sum of $75 per month which William noted on the accounts kept by him under a column variously headed as minor cash layout, business expense, lunch, entertainment, cigars and drinks, as well as other amounts including Standard Club expenses and purchases from cigar and liquor dealers. While William testified he did not drink liquor, he did not testify as to whether or not he smoked and the record indicates substantial amounts paid tobacconists. The Standard Club expenses paid by William in 1949 aggregate $1,120.22 and include club dues in the amount of $8 per month and charges for lunches, dinners and bridge games. Petitioners offered no evidence as to any of the items on the club account other than dues except vague and general testimony that charges above certain amounts must have represented occasions when he had guests for lunch or dinner. He identified no persons whom he entertained as guests at the club or elsewhere other than his wife whom he testified he took to dinner at the club two or three Sundays a month when she was in the city. Section 23(a)(1)(A) of the Internal Revenue Code of 1939 allows the deduction of all ordinary and necessary expenses paid or incurred *90 during the taxable year in carrying on any trade or business. Section 24(a) prohibits deducting from net income personal, living or family expenses, except extraordinary medical expenses deductible under section 23(x). Whether or not an expenditure is a deductible business expense turns on the facts of each case and the burden of proof is on the petitioners to show that such expenditures were primarily business rather than personal expenses. Louis Boehm, 35 B.T.A. 1106; James Schulz, 16 T.C. 401; Richard A. Sutter, 21 T.C. 170. In Louis Boehm, supra, we said "We do not think the burden of proof is met by the petitioners argument that in general, membership in social, political, and fraternal organizations is helpful in obtaining clients through contacts made thereby * * *." The same may be said here regarding William's Standard Club expenditures. Though lacking in definiteness, we accept William's testimony that he did do some entertaining of prospective buyers and sellers of real property in 1949 and that this was an ordinary and necessary business expense. The record indicates, however, that William's real estate brokerage *91 business was not very extensive. Considering all the evidence presented, and exercising our best judgment, we have found that William incurred $100 entertainment expenses in 1949. Accordingly we hold that petitioners are entitled to a deduction in that amount for the taxable year 1949. Section 23(a)(1)(A), Internal Revenue Code of 1939; Cohan v. Commissioner, supra.
William - Automobile Expense and Depreciation Finally, we consider petitioners claim for a deduction in the amount of $2,158.28 for operational expenses and depreciation on an automobile alleged to have been used by William in connection with his business as a real estate broker and owner of certain rental properties. Respondent allowed a deduction in the amount of $497.61 and disallowed $1,660.67 of the total amount claimed. The automobile was used by William for both personal and business purposes, including commuting between his home and office, to go to lunch at the Standard Club, to take his wife to the Dayton Company store and to the airport, as well as to visit his rental properties, properties for which he was real estate broker, and clients. He estimated 90 per cent of the use of the automobile *92 was for business purposes, but testified to no specific instances of such usage. It is to be noted that William's office was in one of the rental properties, another was probably adjacent, and he offered no evidence as to the distance of the other properties or how often he visited them. Also, the amount of expense for operation was not established with any degree of accuracy. Each month William noted on his accounts a flat sum of $90 under a column headed "gas, oil, car washing and storage." The evidence is not considered sufficient to overcome the presumptive correctness of respondent's determination. Cf. Williard I. Thompson, 15 T.C. 609, reversed on another issue 193 Fed. (2d) 586; Albert Nelson, 6 T.C. 764; Coburn v. Commissioner, 138 Fed. (2d) 763, affirming as to a similar issue, reversing on another, a Memorandum Opinion of the Board of Tax Appeals; E. C. O'Rear, 28 B.T.A. 698, affd. 80 Fed. (2d) 473. Decision will be entered under Rule 50. Footnotes
1. There is also some indication in the records kept by William relating to the rental properties (Petitioner's Exhibit 18) as well as in Schedule "B" attached to the return (Respondent's Exhibit A) that the property at 1201-5 Washington Avenue, N., and the property at 244-250 Twelfth Avenue, were adjoining since petitioners treated them as one building for depreciation purposes.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. * * *↩