HERBERT M. LaRUE AND JANE S. LaRUE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79209. Filed October 16, 1961.

*Paul G. Perry, Esq.*, for the petitioners.
*Charles A. Boyce, Esq.*, for the respondent.

BRUCE, *Judge:* The respondent initially determined deficiencies in income tax for the calendar years 1954 and 1955 in the amounts of $957.33 and $401.46, respectively. By amended answer filed at the hearing the respondent claims an increased deficiency for the year 1954 in the amount of $797.67. The principal issue is whether an oral agreement between Herbert M. LaRue and Charles H. Girt was in the nature of a joint venture with a division of fees or amounted to the purchase by LaRue from Girt of an existing practice. If the agreement is held to be a sale and purchase, an alternative issue is raised whether certain arrangements then existing concerning treatment are amortizable. This proceeding was consolidated, for hearing only, with the case of Charles H. Girt, Docket No. 78965. The respondent determined deficiencies against Girt, holding that this agreement was not a sale or exchange and that he is not entitled to treat amounts received by him as long-term capital gains. The respondent takes a contrary position in the present case.

The petitioners filed joint income tax returns for 1954 and 1955 with the director of internal revenue at Pittsburgh, Pennsylvania.

### FINDINGS OF FACT.

The stipulated facts are incorporated herein by this reference.

The petitioners are husband and wife and reside in Pittsburgh, Pennsylvania. Herbert M. LaRue is an orthodontist. From about 1949 until 1954 he was employed as an assistant by Charles H. Girt, an orthodontist, who has been in practice since about 1928. Orthodontia is a specialized phase of dentistry involving the correction of malocclusion or regulating the dental arches to a more favorable aesthetical appearance and functional relationship. Girt maintained his principal office in the Medical Arts Building in Pittsburgh. From about 1937 he operated an office in Uniontown, Pennsylvania, in addition. That office was started at the request of friends to alleviate the difficulties of travel to Pittsburgh by patients. At first he visited Uniontown once in 2 weeks but later on an average of once each week. Patients were referred to him by dentists or by satisfied parents of former patients. He had no clerical help at Uniontown and handled all correspondence from the Pittsburgh office. LaRue occasionally treated the Uniontown patients at Uniontown when Girt was absent.

In 1953 Girt had become weary of the difficulties of visiting Uniontown. In April 1953 LaRue and Girt entered into an oral agreement concerning the Uniontown practice. The agreement provided that during the period May 1, 1953, to April 30, 1954, inclusive, all collections from the Uniontown practice would be received by Girt, 40 percent of such receipts remitted to LaRue, and Girt was to pay all expenses of operating the office. For the period May 1, 1954, to April 30, 1955, inclusive, all the collections from the Uniontown practice were to be received by LaRue, 40 percent of such receipts remitted to Girt, and LaRue was to pay all expenses of the office. From approximately June 1953 on, LaRue attended to the Uniontown practice alone, aided when necessary by consultations with Girt from the latter's Pittsburgh office. After the oral agreement of April 1953, Girt no longer practiced in Uniontown, and except for assisting LaRue in getting the transfer started, was never thereafter in the office. After April 30, 1955, Girt had no interest in the Uniontown office.

The agreement was carried out by both parties and the disposition of receipts from the Uniontown office was as follows:

| Period | Gross receipts | Girt | LaRue |
|---|---|---|---|
| May 1–Dec. 31, 1953 | $9,620 | $5,772 | $3,848 |
| Jan. 1–Apr. 30, 1954 | 4,705 | 2,823 | 1,882 |
| May 1–Dec. 31, 1954 | 9,620 | 3,848 | 5,772 |
| Jan. 1–Apr. 30, 1955 | 4,245 | 1,698 | 2,547 |

In their practice of orthodontia the procedure of Girt and LaRue was as follows: Upon initial contact between the patient and dentist, a preliminary examination would be performed, which included making models of the patient's mouth, lateral jaw X-rays and full mouth X-rays. The second meeting between the dentist and patient was devoted to discussion of the type of treatment involved, the length of time, and cost. If the patient, or parent thereof, was satisfied, a letter was sent to the patient or his parent, outlining the conditions under which the case would be handled, including the terms of the consideration expected for the treatment to be performed. The terms of such letters varied as to the diagnosis of the case and amount and terms of payment. The following is representative of the letters pertaining to the fee arrangement:

The initial fee, which covers models, x-rays and starting appliances, will be $75 and is due now. A fee of $20 per month for adjustments from time to time and for any new appliances that may have to be constructed during the course of treatment. I might add, that this monthly fee has nothing whatsoever to do with the number of visits to my office, as appointments may vary from one to

six weeks apart, depending upon the successful progress of the case. This monthly fee shall continue as long as I have the responsibility for the case. X-rays are considered in my monthly charges and are taken as often as I find it necessary.

On May 1, 1953, there were 42 cases in the Uniontown office resulting from such letters. The amount paid thereon prior to May 1, 1953, was $8,190. The total amount actually realized on such agreements after May 1, 1953, was $13,845.

The physical assets in the Uniontown office were fully depreciated office furniture and equipment with an approximate cost basis of $600 and a small inventory of compounds of nominal value fully expensed for income tax purposes.

The treatment of such cases may extend from 1 to 3 years, but the average time for successful treatment is about 2 years. Once treatment is commenced, the percentage of patients who discontinue the treatment is small. With respect to the 42 cases outstanding when LaRue took over the Uniontown office, all patients completed the treatment with the possible exception of one or two.

Until the time LaRue took over the Uniontown office, Girt was the only practicing orthodontist in Uniontown. After the oral agreement of April 1953, Girt continued to employ LaRue as his assistant in the Pittsburgh office at a salary of $600 per month through April 1954, and at a salary of $416 per month for several months thereafter, until LaRue set up his own office in Pittsburgh.

There was no agreement between Girt and LaRue that Girt would not compete in the practice of orthodontia in Uniontown nor was there an agreement between Girt and LaRue with respect to the use of Girt's name, which continued to appear on the Uniontown office door until May 1955. Girt's name continued on the building directory in Uniontown for the first year of the agreement, during the period May 1, 1953, to April 30, 1954, but was removed sometime during the second year of the agreement. Girt's name appeared in the telephone book in Uniontown in the calendar year 1953, but did not appear in the telephone book for 1954 and 1955. The first year of the agreement between Girt and LaRue, all billings to patients were made from Girt's Pittsburgh office.

Girt intended to transfer the Uniontown practice, including goodwill, to LaRue, and had no intention of competing with LaRue in that locality.

On their income tax returns, filed on the cash basis of accounting, the petitioners treated the fees received in 1954 and 1955 by LaRue from the Uniontown cases as income and did not include in their returns the amounts paid over to Girt. The respondent determined that the amounts of $3,848 in 1954 and $1,698 in 1955 paid over to Girt were taxable to the petitioners.

OPINION.

The petitioners contend that the oral agreement under which LaRue undertook the Uniontown practice effected a joint venture in which Girt contributed arrangements with patients for treatment and LaRue performed services in carrying the treatment to completion with an agreed division of the fees between the joint adventurers. The respondent takes a somewhat similar position in the related case of Girt. In the LaRue case the respondent contends that the agreement constituted a sale of the Uniontown practice and that all collections therefrom are income to LaRue. This is also the position taken by Girt in his case.

The agreement was oral and was carried out without being reduced to writing, hence we must interpret it from the testimony and the essential facts. Girt said that in early 1953 he was "about worked out" by his Uniontown practice. At that time LaRue, who was receiving a salary of $600 monthly, approached him about an increase in salary. Girt testified:

I felt that that was as much as I could possibly pay, and after giving it some thought, I asked him if he would like to take the Uniontown office. He said, "That would be fine, but I can't pay anything."

I said, "I realize that." But I said, "It could be worked up on a basis of over two years."

* * * I said, "The first year I will take 60 percent and pay the costs and you will take 40 percent. The second year it will reverse itself and you will pay the costs."

LaRue testified that Girt's testimony correctly described the agreement. On cross-examination he testified further as follows:

Q. Dr. LaRue, what did you understand the effects of this agreement to be between you and Dr. Girt?

A. That is a good question. I don't know. It was strictly Dr. Girt's agreement and I had to go along with it. I needed more income and he offered the Uniontown practice as a means of obtaining that income on a percentage basis.

Q. Did you think that you were buying a practice?

A. I suppose you might call it that. Yes, I guess I was.

Q. In other words, you were buying the opportunity to practice in that office. Is that what you were buying?

A. Yes.

The petitioners' argument is that, notwithstanding the expressed intention indicating a sale, the agreement when construed by sound legal standards may not be regarded as a sale, since the subject matter was a professional practice and a negligible amount of equipment, and the consideration was a sharing of receipts for a fixed period; there was no agreement concerning the use of Girt's name, no covenant not to compete, no stated valuation of the list of patients entered into the discussion, and there is no proof that any vendible goodwill existed

which could be transferred from seller to purchaser, and that such arrangements for personal services may not be the subject of a sale.

The petitioners contend that the goodwill of a professional man attaches to his person and may not be sold except by contracting to refrain from practicing, citing *E. C. O'Rear*, 28 B.T.A. 698 (1933), affd. 80 F. 2d 473 (1935), and other cases. They allege that no such covenant not to compete was given in the present case.

We have held that a professional man may sell an established practice including goodwill and that the amounts paid for goodwill are proceeds of the sale of a capital asset. *Richard S. Wyler*, 14 T.C. 1251 (1950), acq. in result only, 1959-2 C.B. 7; *Rodney B. Horton*, 13 T.C. 143 (1949), appeal dismissed 180 F. 2d 354 (C.A. 10, 1950).

In *Malcolm J. Watson*, 35 T.C. 203 (1960), an accountant with an established practice formed a partnership with two other accountants and agreed to sell them his practice, including goodwill, for a present payment plus a subsequent payment 10 years later. We construed this as the transfer of an opportunity to gain the benefit of an established practice and held that the present consideration was paid for the goodwill and the gain was taxable as capital gain.

In *Merle P. Brooks*, 36 T.C. 1128 (1961), we held that there was a sale of a clinical orthodontic practice and part of the proceeds were from the sale of goodwill, a capital asset. There was a written agreement mentioning goodwill as an item to be sold and a stipulation limiting competition.

It is clear from the testimony of Girt that he had no intention of competing with LaRue in Uniontown. While there was no written covenant not to compete, there was a professional understanding to that effect, and this was sufficient to LaRue. Girt had built up a practice over some 15 years with dentists in Uniontown who referred cases to him when they did not practice this specialty. He was able to arrange a transfer of this established practice to LaRue. The latter was still carrying on the continued practice in Uniontown in 1960 in addition to his practice in Pittsburgh. It is clear that there was a transfer of the opportunity to gain the benefit of an established practice. This was the intention of the parties and the result of their agreement. We conclude that the agreement effected a sale of the Uniontown practice, including goodwill, and that LaRue purchased a capital asset. Therefore, the entire proceeds of the Uniontown office from May 1, 1953, less expenses, were ordinary income to LaRue, including the part thereof paid to Girt as purchase price. The cases cited by the petitioners are, in our opinion, not controlling.

The petitioners next contend that if the agreement is interpreted as a sale, the buyer is entitled to amortize the 42 cases on hand in the Uniontown office over the 2-year term of the agreement which

was also the average period for treatment, since at the end of this period practically all the original cases had finished treatment. This argument mistakes the nature of what was sold. The subject of the sale was not the pending cases for treatment which were in various stages of completion. It was more than that. It was primarily the opportunity to acquire the established practice which had been built up by Girt over a period of 15 years. The amount realized from the 42 cases after May 1, 1953, was $13,845. The amount realized from the practice in the 2 years of the agreement was $28,190. The continuation of the practice obviously resulted in the acquisition by LaRue of many new cases. This collection of advantages which LaRue acquired was not a wasting asset but had a continuing value and was not amortizable. See *Thrifticheck Service Corporation*, 33 T.C. 1038 (1960), affd. 287 F. 2d 1 (C.A. 2, 1961) ; *Richard M. Boe*, 35 T.C. 720.

The respondent, by amended answer, asks for an increased deficiency alleging that the petitioners omitted income of $2,823 representing receipts of the Uniontown office in addition to the amount of $3,848 determined in the notice of deficiency. The omitted amount represents the 60 percent of gross receipts for the period January 1 through April 30, 1954, retained by Girt. The burden is upon the respondent to prove new matters pleaded in the answer. Rule 32, Tax Court Rules of Practice. Girt paid the expenses of the Uniontown office for the first 4 months of 1954 and there is no showing of the amount of such expenses. Only the net amount of these receipts after payment of the expenses may be treated as income to LaRue and partial payment for the practice. Since respondent has not shown the net amount of such receipts, if any, the burden of proof has not been met and we must hold for the petitioners that the additional amount claimed is not includible in the petitioners' income for 1954.

There is an adjustment for the medical expense deduction which can be cared for in the computation under Rule 50.

*Decision will be entered under Rule 50.*