319 F.2d 303
 63-2 USTC P 9571
 Max B. KARAN and Rita Karan, His Wife, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
ESTATE of Leo MELNIK, Deceased, Samuel Goldenberg, Executor,
Respondent.
 Nos. 13980, 13981.
 United States Court of Appeals Seventh Circuit.
 June 26, 1963.
 
 George J. Laikin, Samuel Goldenberg, Joseph I. Swietlik, Sherwin C. Peltin, Milwaukee, Wis., Laikin, Jacobson & Swietlik, Milwaukee, Wis., of counsel, for Karan and Melnik.
 Louis F. Oberdorfer, Asst. Ayyt, Gen., William A. Geoghegan, Atty., Tax Division, Lee A. Jackson, David O. Walter, Arthur I. Gould, Attys., Dept, of Justice, Washington, D.C., for C.I.R.
 Before KNOCH, CASTLE and KILEY, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 No. 13980. Petitioners Max B. Karan and Rita Karan, his wife,[1] brought action in the United States Tax Court to overrule portions of deficiencies determined by the Commissioner of Internal Revenue, respondent, in the Karans' income taxes for the years 1954 through 1957. The petitioners had claimed, as deductions in their returns for the aforesaid years, sums paid to Leo Melnik[2] in connection with the termination of the partnership between Mr. Karan and Mr. Melnik.
 
 
 2
 The petitioners conend that in finding for the Commissioner the Tax Court erred in (1) failing to make certain findings of fact required by the evidence, (2) making other findings of fact unsupported by the evidence, (3) failing to apply the pertinent law, and (4) admitting incompetent evidence.
 
 
 3
 In 1932 Messrs. Karan and Melnik formed the partnership of Melnik and Karan, Certified Public Accountants, to share work load and profits equally, each to continue to service separately his own prior accounts.
 
 
 4
 In 1954, the partners retained Samuel Goldenberg. attorney, to prepare an agreement for dissolution of the partnership. A great deal of evidence was adduced to support Mr. Karan's contention that time devoted by Mr. Melnik to his personal investments and increasing disagreement among Mr. Melnik, Mr. Karan, and their employees, made the continuance of the partnership a burden to Mr. Karan, and that burden constituted his motive for seeking dissolution of the partnership.
 
 
 5
 May 5, 1954, both partners signed an agreement whereby Mr. Melnik assigned, to Mr. Karan, Mr. Melnik's interst in the partnership. The furniture and equipment was to be divided between them. Each was to receive one-half the accounts receivable as collected for work commenced prior to July 1, 1954, but not completed as of that date. The bank account in the partnership name was to be maintained for such fees. Mr. Melnik could enforce payment of accounts receivable remaining unpaid on July 1, 1955. The payment for labor, travel, etc., on such work as had to be completed after July 1, 1954, was to come out of the partnership funds.
 
 
 6
 Mr. Karan paid Mr. Melnik $30,000, evidenced by a promissory note which provided for monthly payments of $750 from August 1, 1954, through November 1, 1957. The agreement made no provision for acceleration of payments or for interest, but the note (Exhibit 2) provides for 6% Interest after maturity payable monthly on the principal remaining from time to time unpaid.
 
 
 7
 Mr. Melnik was prohibited from soliciting or accepting employment from any of the 88 listed clients of the partnership Nothing was said in the agreement about 'good will.'
 
 
 8
 There were other provisions which we need not set out here.
 
 
 9
 Later in 1954, one of the 88 listed partnership accounts declined to be served by Mr. Karan and was transferred to Mr. Melnik. An allowance of $750 was made in the agreed payment of $30,000. The Tax Court found that the consideration of $30,000 was based on an approximation of 70% Of the average annual fees earned by the partnership and that the consideration for the transfer of the one account mentioned was similarly computed.
 
 
 10
 After July 1, 1954, collections from outstanding receivables over a period of about two years were deposited in the bank account maintained in the partnership name, out of which equal payments were made to Mr. Melnik and Mr. Karan. A legal fee in 1955 for enforcement of such collection was paid from the partnership funds.
 
 
 11
 Mr. Melnik reported $9,000 in 1956 and $8,200 in 1957 as long term gains from sale of a partnership interest. The Commissioner considered these sums taxable as ordinary income. Mr. Karan claimed deductions for the sums paid Mr. Melnik. There is an unexplained discrepancy between the deductions and the gains reported by Mr. Melnik which is immaterial here. The Commissioner disallowed the deductions as payments to Mr. Milnik for his interest in the parternship good will.
 
 
 12
 In a prior opinion[3] the Tax Court had found that the effect of the May, 1954 agreement was the sale of Mr. Melnik's interest in the good will of the partnership as of July 1, 1954, to Mr. Daran (who was not a party to that proceeding). The sums received by Mr. Melnik from Mr. Karan in 1954 and 1955 were held to be taxable as long-term capital gains. The Tax Court came to the same conclusion respecting the sums received in 1956 and 1957.
 
 
 13
 The Tax Court assumed that personal differences between the partners were a strong motive for termination of the partnership. However, the Tax Court did not accept the petitioners' conclusions from that fact. Mr. Karan contended that, because of the diminishing time which Mr. Melnik devoted to the accounting practice (from which he nevertheless received half the profits) and his difficulties with employees and clients, Mr. Karan was obliged to extricate himself from an onerous and burdensome relationship by paying Mr. Melnik, in effect, not to work in the office, not to interfere with the clientele of the partnership. Mr. Karan argues that these payments constituted ordinary and necessary business expenses analogous to payments made to someone not to compete. The agreement did provide that as of July 1, 1954, Mr. Karan would discontinue the use of the name 'Melnik and Karan' as a firm name, and that Mr. Melnik would not use the name 'Melnik and Karan.'
 
 
 14
 The Tax Court was impressed (as we are) by the fact that out of his own individual funds, mr. Karan did purchase (for $30,000) Mr. Melnik's interest in the partnership good will, an interest represented by the listing of 88 clients, an asset of value continuing over several years. By October 31, 1957, only 28 of the 88 were no longer clients, and at the time of the trial in the Tax Court in September, 1961, only an additional ten had ceased to be clients. Mr. Karan contends that by considering the source of the purchase funds, the Tax Court was placing more reliance on the form rather than on the substance of the transaction. We do not agree.
 
 
 15
 Mr. Karan argued at length that the evidence proved the greater number (by far) of the partnership's 88 clients, (including the clients who represented the sources of the largest fees) were devoloped by him and were served by him either alone or with the aid of a partnership employee; and that Mr. Melnik did very little of the work of the partnership. On this basis, he contends that no good will existed for him to purchase from his partner. Good will has been defined as the probability that 'old customers will resort to the old place' without contractual compulsion. Brooks v. C.I.R., 36 T.C. 1128, 1133 (1961). The Tax Court was not satisfied that this good will of the partnership was solely due to Mr. Karan's own personal qualfifications.
 
 
 16
 This Court will give primary consideration to the conclusions drawn by the Tax Court which was the trier of the facts. Our own review of the record before us leaves us with the conviction that the Tax Court has committed no mistake here. We find substantial support for the findings of fact and for the conclusions of law drawn from them. Universal Castings Corp. v. C.I.R., 7 Cir., 1962, 303 F.2d 620, 626; Northwestern Terra Cotta Corp. v. C.I.R., 7 Cir., 1961, 295 F.2d 522.
 
 
 17
 The terms of the agreement respecting future competition were in the nature of precautionary provisions looking to the future, and were not severable from the sale of the good will, so that no part of the consideration can be attributed to those provisions. See Schultz v. C.I.R., 9 Cir., 1961,294 F.2d 52.
 
 
 18
 Mr. Karan asserts that in any event, he is entitled to consider these payments to Mr. Melnik as deductions pursuant to Internal Revenue Code, 1954, 736.[4]
 
 
 19
 This section applies to payments made by a partnership, and not to transactions between partners such as we have here. Treasury Regulation 1.736-1(a)(1)(i). / 5/ The payments, as indicated, were made by Mr. Karan personally, not by the partnership Melnik and Daran. Payment was evidenced by Mr. Karan's onw promissory note, which was guaranteed by Samuel Sampson, described by Mr. Karan as 'a person of substantial means.' We agree with the analysis of 736 by the Tax Court. We also find it inapplicable here.
 
 
 20
 We are obliged to conclude that 741 is applicable.[6] Further, the pertinent Treasury Regulation 1.741-1(b) provides:
 
 
 21
 '* * * the provisions of section 741 shall be applicable (1) to the transferor partner in a 2-man partnership when he sells his interest to the other partner, * * *'
 
 
 22
 The Karans assert that prejudicial error was committed when the Tax Court failed to disregard the testimony of Samuel Goldenberg, the attorney who drew up the May, 1954 agreement for dissolution of the partnership, and who acted as executor of the estate of Leo Melnik. Mr. Goldenberg testified over objection of the petitioners and without specific waiver from his client Leo Melnik (then deceased) or Mr. Karan.
 
 
 23
 As he represented both the partners, who were dealing at arms length, in drawing their agreement, we cannot agree that Mr. Goldenberg's testimony respecting the provisions of the agreement (and nowhere inconsistent with the terms of that document as exhibited in the Tax Court trial) revealed any confidential privileged communication. We find no prejudicial error in overruling objections to his giving evidence.
 
 
 24
 We have considered all other points and arguments put forward on behalf of the Karans, but none of them alters our opinion that the Tax Court must be affirmed.
 
 
 25
 No. 13981. The Commissioner appealed from the decision respecting the nature of the payments made to Mr. Melnik only in order to protect the Commissioner in the event of reversal of the Tax Court's decision respecting the Karans. If this Court had held that the Karans were entitled to deduct the payments made to Mr. Melnik, then, in the event, the Commissioner contended that these payments would have constituted ordinary income to Mr. Melnik, and that the decision respecting his estate ought also to be reversed.
 
 
 26
 The decisions of the Tax Court in both cases are affirmed.
 
 
 27
 Affirmed.
 
 
 
 [1]
 Mrs. Karan is a party only because she and her husband filed joint income tax returns for the years in question
 
 
 [2]
 Leo Melnik died in 1959. Samuel Goldenberg was the executor of his estate
 
 
 [3]
 Estate of Melnik v. C.I.R. (Jan. 27, 1961) CCH-20 TCM 74, 1961-18, Dec. 24,629(M)
 
 
 [4]
 736. Payments to a retiring partner or a deceased partner's successor in interest
 '(a) Payments considered as distributive share or quaranteed payment.-- Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered--
 '(1) as a distributive share to the recipient of partnership income if the amount therof is determined with regard to the income of the partnership, or
 '(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.
 '(b) Payments for interest in partnership.--
 '(1) General rule.-- Payments made in liguidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).
 '(2) Special rules.-- For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for--
 '(A) unrealized receivables of the partnership (as defined in section 751(c)), or
 '(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.'
 (26 U.S.C. 736.)
 
 
 [5]
 Sec. 1.736-1 Payments to a retiring partner or a deceased partner's successor in interest.--
 (a) Payments considered as distributive share or guaranteed payment.-- (1)(i) Section 736 and this section apply only to payments made to a retiring partner or to a deceased partner's successor in interest in liquidation of such partner's entire interest in the partnership. * * * Section 736 and this section do not apply if the estate or other successor in interest of a deceased partner continues as a partner in its onw right under local law. Section 736 and this section apply to payments made by the partnership and not to transactions between the partners. * * *
 
 
 [6]
 '741. Recognition and character of gain or loss on sale or exchange
 'In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partnter. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital assert, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in vlaue).' (26 U.S.C. 741.)