CREDIT BUREAU OF ERIE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1996–68.   Filed April 6, 1970.

Bertram C. Linsey (an officer), for the petitioner.
*D. Alden Newland*, for the respondent.

728

OPINION

At trial and on brief the petitioner raised two procedural issues which can be disposed of summarily. We reject, as having no merit, the contention that Rule 32, Tax Court Rules of Practice, shifts the burden of proof in this case to the respondent. Except as otherwise provided by statute, Rule 32 shifts the burden of proof to respondent only "in respect of any new matter pleaded in his answer." In this case no new matter was pleaded by respondent in his answer. Nor did he raise any new matter at the trial. There has been only one fundamental substantive issue throughout this entire proceeding, namely: Is the petitioner entitled to a depreciation deduction with respect to the intangible assets (collection accounts) which it purchased from Smith and which it listed on its Federal corporation income tax return as "Credit records"? The respondent in no way misled the petitioner by his use of the term "credit records" in his notice of deficiency to refer to what the petitioner at trial characterized as "collection records" or "accounts." To be sure, the petitioner cannot complain about respondent's use of the term "credit records" in the notice of deficiency to describe the intangible assets involved herein when it used the very same term on its Federal income tax returns in claiming the depreciation deductions which are in controversy herein.

Likewise, we find petitioner's contention that respondent conducted a second examination of its books and records in violation of section 7605(b)[2] as lacking any merit for three reasons. First, there is no evidence showing that a second examination of the petitioner's books was in fact made. Second, if there was a reexamination of its books and records, it would appear that the petitioner waived any objection by consenting thereto. See *Philip F. Flynn*, 40 T.C. 770 (1963); *Leslie A. Sutor*, 17 T.C. 64 (1951); and *United States* v. *O'Connor*, 237 F. 2d 466 (C.A. 2, 1956). Third, respondent has authority to reexamine the petitioner's books, even though petitioner has filed a petition with this Court, since respondent may allege an increased deficiency. See *United States* v. *Roundtree*, 420 F. 2d 845 (C.A. 5, 1969); *National Plate & Window Glass Co., Inc.* v. *United States*, 254 F. 2d 92 (C.A. 2, 1958); *Tax Liability of Norda Essential Oil & Chemical Co.*, 142 F. Supp. 868 (S.D. N.Y. 1956); and *Bolich* v. *Rubel*, 67 F. 2d 894 (C.A. 2, 1933).

We turn now to the question of whether the petitioner is entitled to the claimed depreciation deductions. Section 167(a)(1) provides

[2] SEC. 7605(b) RESTRICTIONS ON EXAMINATION OF TAXPAYER.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business. Section 1.167(a)–3, Income Tax Regs., provides, in pertinent part, as follows:

If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, *the length of which can be estimated with reasonable accuracy*, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. *No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to goodwill.* * * * [Emphasis supplied.]

The burden of proving (1) the depreciable basis of the collection accounts [3] and (2) the useful life of such asset is clearly on the petitioner. See *Thrifticheck Service Corporation,* 33 T.C. 1038 (1960), affd. 287 F. 2d 1 (C.A. 2, 1961).

Respondent argues that the collection accounts had an indeterminate useful life because the information pertaining thereto can be used for an indefinite period of time in petitioner's collection and credit reporting departments. Alternatively, respondent argues that the petitioner purchased the customer structure of an operating collection agency, a mass indivisible asset which is not subject to depreciation.

Petitioner contends that it paid $15,000 for what it calls "collection cards," that these cards constituted an intangible asset having in the aggregate a useful life of 7½ years, and that it is entitled to recover the cost thereof through depreciation over such period under the provisions of section 167(a)(1).

We do not understand the petitioner's contention to be that it paid $15,000 for approximately 100,000 cards or pieces of physical paper. Although it is none too clear, the petitioner apparently is using the term "collection cards" to refer to the right to collect the collection accounts on a contingency-fee basis. We infer this particular meaning of the term from the petitioner's argument in support of a 7½-year period as the useful life of the "cards." It is argued that the collection "cards" were of use in its business only as a possible source of income, i.e., the right to collect the accounts on a contingency-fee basis; if the cards were not collected within the period of 7 to 8 years, then the petitioner considered them to be uncollectible and thus worthless. Reasoning from this, the petitioner claims that the cards (the right to collect the accounts) were of use in its business only for a period of 7½ years.

---

[3] Contrary to the petitioner's contention, we think the question of just what portion of the purchase price is properly allocable to the "collection accounts," qua the right to collect the outstanding balance of the accounts acquired from Smith, is at issue herein.

Petitioner's contention is based on two faulty factual assumptions: (1) That it paid $15,000 merely for the right to collect the balance reflected on the accounts, and (2) that the intangible assets evidenced by the collection accounts have a reasonably ascertainable useful life.

We reject, as lacking any factual substance, the contention that the petitioner paid $15,000 merely for the right to earn income by collecting the accounts on a contingency-fee basis. While the right to collect these accounts and thus earn income possessed some element of value, petitioner has offered no evidence to support its assumption that such right had a value of $15,000. The record herein is totally void of any evidence pertaining to (1) the face value of the accounts as of the date petitioner acquired the collection business, (2) the percentage of accounts based on experience that were possibly collectible, or (3) the percentage of the petitioner's contingent fee to be realized from the collection of those accounts considered collectible. In the absence of such evidence, we have no basis to determine the value of the right in question to the petitioner. It is significant, we think, that the petitioner made no attempt to value the right at the time of purchase and also that the parties made no allocation of any portion of the purchase price in the agreement of sale. In short, we are not convinced on this record that the right to collect the accounts had a value of $15,000 as of the date the petitioner purchased the collection business or that petitioner paid this amount therefor.

Accordingly, we hold that the petitioner is not entitled to any depreciation deduction with respect to the right to collect the balance, as reflected on the accounts acquired from Smith, since it has failed to produce evidence sufficient to establish its cost or depreciable basis therein. See secs. 167(g), 1011, and 1012.

As we view the facts, the petitioner's primary purpose in acquiring Smith's entire collection business, including "all accounts at any time placed with [Smith] for collection," was to acquire the established customer structure which he had built up. This conclusion is buttressed by the following testimony of Richard C. DuMond, a director and officer of petitioner:

Q. [Respondent's counsel] * * * [W]as not the principal purpose of the purchase to get the right to service the customers?
A. [DuMond] I would say yes.

The petitioner purchased much more than the mere "authority to act as an agent in the collection of debts owed to [its] customers." Indeed, the record shows that the subject of the sale was primarily the established collection business as a going concern, or "the opportunity to gain the benefits of an established" customer structure. *Herbert M. LaRue*, 37 T.C. 39, 44 (1961). The record further shows that by acquiring the collection accounts the petitioner acquired the right to service

Smith's former customers who continued to refer collection business to the collection department even up to the date of trial herein. The acquisition of this right placed the petitioner in the advantageous position of obtaining additional business from Smith's former customers after collection of the initial accounts, as well as enabling it to maintain an organization that would be able to obtain collection business from other customers. In this respect, DuMond testified that the petitioner was "continually getting new [collection] business in [its] office." It is well recognized that this probability that "old customers will resort to the old place" is generally considered goodwill. *Malcolm J. Watson*, 35 T.C. 203, 213 (1960) ; *Erwin D. Friedlaender*, 26 T.C. 1005 (1956) ; *Karan* v. *Commissioner*, 319 F. 2d 303 (C.A. 7, 1963). Plainly, the probability or prospect of continued business with the customers, after the collection of the initial accounts, had substantial value. In our opinion the history and prospect of relations with Smith's former customers continuing beyond the period of 7½ years preclude any reasonable determination of a period for depreciating the amounts paid for the collection accounts.

Petitioner denies that it purchased the customer structure of Smith's collection business, arguing that it already had contact with his customers because, for the most part, they were the same as those of its reporting business.[4] This argument is based on the assumption that the petitioner could have terminated its operating agreement with Smith and then have successfully solicited the collection business of his customers. We find no basis in the record to support this assumption. To the contrary, we think the evidence establishes that, in the event of such termination, Smith could have retained a large portion of his collection business. Although there is no evidence on this point, it is not unlikely that Smith, a reasonable businessman, did have an express provision in his agreement with the petitioner prohibiting the petitioner, in such an event, from freely soliciting his customers. Moreover, the petitioner's argument is contradicted by its own witness who testified that the principal purpose of the purchase was to get the right to service the customers.

We are perplexed by the statements on brief that "Petitioner did not buy Mr. Smith's business," and that it "already possessed legal title" thereto, and that it "purchased only Mr. Smith's equitable interest." The record contradicts these statements, particularly the stipulation of facts agreed to by the petitioner. The stipulation provides: "Prior to the * * * sale on February 20, 1960, Thomas

---

[4] It is clear that the only contact the petitioner had with Smith's customers was limited to its activities of furnishing them with credit information. It did not perform any collection services for them. Only Smith did this, as evidenced by the stipulation that he "was the *sole* * * * *operator* of the Collection Department." (Emphasis supplied.)

Warren Smith was the *sole owner* and operator of the Collection Department of the Credit Bureau of Erie, Inc." (Emphasis added.) The correct interpretation to be given this stipulation, we think, is that Smith was the sole legal and equitable owner of the collection business. The petitioner adduced no evidence that it was, in any sense, the legal owner of the collection business prior to its purchase thereof. The stipulation further provides: "On February 29, 1960, the petitioner *purchased* from Thomas Warren Smith a collection agency * * *." (Emphasis added.) These facts clearly demonstrate the incorrectness of petitioner's statements.

Based on the foregoing analysis, we conclude that the "collection accounts" which the petitioner acquired from Smith constituted an intangible mass asset in the nature of goodwill with an indefinite useful life and therefore not depreciable. See *F. W. Drybrough*, 45 T.C. 424, 437 (1966);[5] *Herbert M. LaRue, supra; Westinghouse Broadcasting Co.*, 36 T.C. 912 (1961), affd. 309 F. 2d 279 (C.A. 3, 1962); *Richard M. Boe*, 35 T.C. 720 (1961), affd. 307 F. 2d 339 (C.A. 9, 1962); *Thrifticheck Service Corporation, supra; Anchor Cleaning Service, Inc.*, 22 T.C. 1029 (1954); *U.S. Industrial Alcohol Co.*, 42 B.T.A. 1323 (1940), affirmed on this issue 137 F. 2d 511 (C.A. 2, 1943); *National Weeklies* v. *Commissioner*, 137 F. 2d 39 (C.A. 8, 1943), affirming a Memorandum Opinion of this Court; *Successful Farming Publishing Co.*, 23 B.T.A. 150 (1931), affirmed sub nom. *Meredith Pub. Co.* v. *Commissioner*, 64 F. 2d 890 (C.A. 8, 1933); and *The Danville Press, Inc.*, 1 B.T.A. 1171 (1925). See generally 4 Mertens, Law of Federal Income Taxation, sec. 23.64.

We perceive a close resemblance between the benefits accruing to the petitioner through its acquisition of the collection acounts and those accruing to the purchaser of an insurance business through the acquisition of insurance expirations. Viewed in this light, the collection accounts, just as insurance expirations, ought to be considered as being part of goodwill, which is not subject to depreciation, or as being so inextricably linked with goodwill as to have an indefinite life and therefore not depreciable. *Marsh & McLennan, Inc.*, 51 T.C. 56 (1968), affd. 420 F.2d 667 (C.A. 3, 1969); and *Alfred H. Thoms*, 50 T.C. 247 (1968).

Furthermore, the collection accounts also resemble possible unfilled orders which are ordinarily considered goodwill. See *Successful Farming Publishing Co., supra;* and *Danville Press, Inc., supra.*

---

[5] In the *F. W. Drybrough* case we concluded in a different factual context that a collection agency's file of 7,000 claims which it had the right to collect on a contingent fee basis, under an arrangement which the owners of the claims could terminate at will, was a single intangible mass asset in the nature of goodwill.

Thus, on the authority of these cases, we conclude that the collection accounts constituted a mass asset whose life will fluctuate as accounts are collected and new accounts acquired. Such an asset is not depreciable because it does not have a determinable useful life.

Even if we were to assume *arguendo* that the $15,000 constituted a payment for the collection accounts, separate and apart from the customer structure and goodwill, we would nevertheless hold that the payment was for an asset which has not been shown on this record to have a reasonably ascertainable useful life. Consequently, the petitioner still would not be entitled to a depreciation deduction with respect to such asset. See *Thrifticheck Service Corporation, supra.* Petitioner has provided us with no competent evidence fixing with any degree of accuracy the useful life of the collection accounts. Of crucial significance is the fact that the petitioner made the determination of useful life after only *one* year of experience in the collection business. We believe that such a limited period of time does not provide a sufficient basis for the petitioner's determination of useful life. Indeed, the petitioner in its brief frankly states: "The determination of a useful life for the Collection Cards * * * required only that we establish, however arbitrarily but yet on a sensible basis, some feasible and practical period; * * * [I]t would seem to us, it is immaterial what period we might have selected—6 years, 7, 7½, 8 or 10 years. * * * Under OUR [sic] procedures and policies we established definitely an arbitrary cutoff date." From this, we think the basis of the 7½-year useful life claimed on collection accounts was no more than the unsupported opinion of petitioner's board of directors. See sec. 1.167(a)-3, Income Tax Regs.

Accordingly,

*Decision will be entered for the respondent.*