**O'REAR v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. O'REAR.**

**Nos. 6803, 6819.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1935.

Elwood Hamilton and J. C. W. Beckham, Jr., both of Louisville, Ky., for O'Rear.

Frank J. Wideman, Sewall Key, and S. Dee Hanson, all of Washington, D. C., for the Commissioner.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The proceeding before the Board of Tax Appeals in each case involved taxes for the calendar year 1922. The taxpayer is E. C. O'Rear, a lawyer practicing at Frankfort, Ky. On January 2, 1922, he entered into an agreement with W. D. Fowler by which the latter was to acquire a one-third interest in his law firm, including all fees thereafter collected upon new or former employment of either. The agreement in part is as follows: "As further differential in division of fees and income of the firm business, due to the conceded excess value of good will and unearned fees of said O'Rear put into the firm, said Fowler agrees to pay said O'Rear Twenty-Five Thousand Dollars ($25,000)."

On June 1st of the same year, O'Rear entered into a second agreement with William L. Wallace, which provided that Wal-

lace should also become a member of the firm, and should receive one-third of the income from the law business. This agreement contained a provision similar to that quoted from the Fowler contract, and was to continue for five years. Fowler and Wallace each paid O'Rear $25,000 as agreed, but the $50,000 so received was not reported by the taxpayer as income. The Commissioner, however, included the amount in ascertaining gross income on the ground that it represented the then present value of a two-thirds interest in the petitioner's expected future profits from his profession. The taxpayer sought review by the Board of Tax Appeals, but the Commissioner was sustained. No. 6803 is the petition to review the Board's action.

In 1922, O'Rear's residence and most of its contents were destroyed by fire. The house was insured for $15,000, and the furniture and furnishings for $6,000. In his return for 1922, O'Rear claimed a deduction of $53,287.26 as his loss not covered by insurance. The Commissioner disallowed it, except for a minor item on household goods. On review by the Board the taxpayer was allowed a loss of $55,000, based upon the cost of that part of his property acquired after February 28, 1913, added to the fair market value on March 1, 1913, of the property acquired prior thereto. No. 6819 is the Commissioner's petition to review the Board's decision.

### No. 6803.

█ The taxpayer's contention is, that having been a lawyer for many years with an active and successful practice, having been a Chief Justice of the Court of Appeals of Kentucky, and nearing 60 years of age, he had built up a business and good will which had a definite monetary value; that this value was a capital asset, which he might sell in part for a substantial consideration; that the legal effect of his transactions with Fowler and Wallace constituted a sale of a portion of this asset, and the consideration received therefor was not taxable income, except as it may have represented increase in value of good will since March 1, 1913. While conceding that he could not have sold his entire good will and withdrawn altogether from the practice of law, he asserts, somewhat vaguely and anomalously, that the good will that attaches to a lawyer in his practice is a peculiar asset, in that, while the whole may have no salable value, a part may have a high value to a limited number of people; that is, to lawyers of ability but without a clientele comparable to his. In response, the Commissioner argues that the good will of a professional man is not severable from his person, and therefore cannot be the subject of separate existence and sale; that Congress by section 213 (a) of the Revenue Act of 1921 (42 Stat. 237) defines gross income to include "gains, profits, and income derived from * * * compensation for personal service * * * of whatever kind and in whatever form paid, or from professions"; that this is so broad and all-inclusive as to embody not only current income from personal service or professions, but also all sums, however received, in lieu of future earnings; that the statute makes no provision for the capitalization of a professional man's reputation, ability, and industry, or his prospects for rendering personal service. Finally, it is urged that it is not alone impossible for a lawyer to prove the value of such good will as may have attached to his reputation as of March 1, 1913, because of the impossibility of segregating fees attributable to good will from those which measure the reasonable value of his services to clients, but that in any event no proof was made of the value of good will as of March 1, 1913, so as to permit recognition of the gain realized in 1922.

Whether professional reputation ever constitutes a capital asset that may be bought and sold under the guise of good will, we are not, however, in this case required to decide. Undoubtedly, cases may be found which support and deny the contention. It is unnecessary to cite them; it being sufficient to say that we have been referred to none which holds that salable good will attaches to the reputation of a lawyer, who, as an officer of the court and by the rules of professional conduct which govern him, may not advertise, whose license to practice and memberships in bar associations may not be transferred in whole or in part, who requires for his practice physical assets by way of library and office equipment negligible in relation to earnings, and the location of whose office is comparatively inconsequential in attracting clients so long only as it is reasonably convenient. We confine ourselves, however, to the contracts here involved. They are not contracts for the sale of good will. By their terms they recognize that the taxpayer is entitled by reason of his reputation and experience, or due to the conceded excess of good will and unearned fees, to

a greater share of the future income of the firm than his less experienced and younger partners. As a "differential" in the division of fees as yet unearned, they agree to pay him a substantial present consideration. This is but anticipated future income reduced to present worth, and is taxable as income when received. The decision of the Board must be affirmed.

### No. 6819.

The only issue in this review is said to relate to whether or not the March 1, 1913, value of the taxpayer's residence, increased by the cost of improvements made subsequent to that date, must be reduced by sustained depreciation in order to ascertain loss not covered by insurance. The Board held that cost and value should not be so reduced, and this is assigned as error.

■ An examination of the record, however, discloses that no contention with respect to depreciation and obsolescence was made by the Commissioner at the hearing, and no proofs whatever relative to the amount of or the proper rates for depreciation were presented. Indeed, the record is wholly silent as to the ground on which the taxpayer's claim for deduction was denied. In so far as we are advised it may have been denied upon rejection of values claimed as of March 1, 1913, on the ground that they were less than claimed, on the ground that improvements were not made or were not of the value claimed, or even upon the ground that there had been no destruction by fire. We understand, of course, that the decision of the taxing officer is conclusive if there be substantial evidence to support it. Tracy v. Commissioner, 53 F.(2d) 575 (C.C.A.6); Atlas Plaster & Fuel Co. v. Commissioner, 55 F.(2d) 802 (C.C.A.6); Harmount v. Commissioner, 58 F.(2d) 118 (C.C.A.6). The burden is therefore upon the taxpayer to prove the assessment wrong. If correct on any basis, he must fail. Crowell et al. v. Commissioner, 62 F.(2d) 51 (C.C.A.6). We have also held that the taxpayer has made out his case when he has put in proof clearly and distinctly tending to show a determining fact, and the proofs remain unchallenged. Rookwood Pottery Co. v. Commissioner, 45 F.(2d) 43; Pioneer Pole & Shaft Co. v. Commissioner, 55 F.(2d) 861. We do not understand, in the light of these cases that the presumption that attaches to the validity of the assessment compels that it be sustained when unsupported by evidence, or on issues not presented to the Board. It is true that the Board expressed the view that cost and value should not be reduced by depreciation or obsolescence. Whether construed as a finding of fact or a conclusion of law, it was gratuitous and not required by pending issues, and as the Board has well said of its own function, it is "primarily judicial and not inquisitorial." Ohio Clover Leaf Dairy Co. v. Commissioner, 9 B.T.A. 433.

■ It was not until after the Board had announced its decision on July 18, 1933, that the Commissioner first raised the question as to depreciation. This he did by motion to reopen on October 3, 1933, and the denial of the motion is assigned as error. We are unable to so view it. The motion prayed for reopening not alone for purposes of computation, but for reconsideration of the case upon its merits. Rule 50, of Rules of Practice and Procedure of the Board of Tax Appeals, prescribes that upon consideration of computation of a deficiency or overpayment resulting from a determination already made, no argument will be heard upon or consideration given to any new issues. The Board is authorized to prescribe such rules of practice and procedure. Bankers' Coal Co. v. Burnet, 287 U.S. 308, 312, 53 S.Ct. 150, 77 L.Ed. 325. It has been repeatedly held that the granting of a rehearing rests within the sound discretion of the Board. Freeman-Hampton Oil Corporation v. Commissioner, 65 F.(2d) 456 (C.C.A.5); Weiller et al. v. Commissioner, 64 F.(2d) 480 (C.C.A.2); Bankers' Coal Co. v. Burnet, supra. With this view we have been in accord. Seiberling Rubber Co. v. Commissioner, 70 F.(2d) 651. We do not in principle distinguish between a petition for rehearing and a petition to reopen. In so far as new issues are sought to be injected after determination, the end sought is the same whether pursued by the one motion or the other. In either case it is analogous to a motion for new trial, which the courts generally hold is not subject to review except for abuse of discretion. If in purely administrative proceedings we apply to questioned procedural steps analogies drawn from suits at law, United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626, there is greater reason to rely upon such analogies where the challenged proceedings are before tribunals having judicial or quasi judicial powers. We conclude that the Board

476

did not abuse its discretion in denying the Commissioner's motion to reopen.

No. 6803 affirmed.

No. 6819 affirmed.