HOYT BUTLER AND VIRGINIA W. BUTLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2759-64. Filed May 23, 1966.

*Joseph B. Alala, Jr.*, and *Charles D. Gray III*, for the petitioners.
*O'Hear W. Fraser, Jr.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1959, 1960, and 1961 in the amounts of $361.58, $361.57, and $216.95, respectively.

The issue for decision is whether petitioner Hoyt Butler received the amount of $9,641.99 as payment for goodwill of a one-half interest in his accounting practice which he conveyed to J. Edward Stowe pursuant to an oral agreement between the two for the formation of a partnership for the practice of accounting.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife residing in Gastonia, N.C., filed their joint Federal income tax returns for the calendar years 1959, 1960,

and 1961 with the district director of internal revenue, Greensboro, N.C. Petitioners kept their records and reported their income on the cash basis of accounting.

Hoyt Butler (hereinafter referred to as petitioner) is a certified public accountant. He received his certificate from the State of North Carolina in 1949 and has been engaged in the practice of accounting as a certified public accountant since that time.

Prior to March 31, 1956, petitioner operated his accounting practice as a sole proprietorship. On March 31, 1956, petitioner entered into an oral agreement with J. Edward Stowe (hereinafter referred to as Stowe) to form a partnership as certified public accountants to practice under the name of Butler and Stowe.

The oral agreement made on March 31, 1956, between petitioner and Stowe included an understanding (1) that the value of the business owned solely by petitioner prior to the formation of the partnership on March 31, 1956, was $40,000, measured by a formula agreed upon by them, (2) that Stowe would receive a one-half interest in the business for the payment to petitioner of $10,000, and (3) that petitioner and Stowe were to share profits in the newly formed partnership for the year ended March 31, 1957, on the basis of 40 percent to Stowe and 60 percent to petitioner, for the year ended March 31, 1958, on the basis of 43 percent to Stowe and 57 percent to petitioner, for the year ended March 31, 1959, on the basis of 46 percent to Stowe and 54 percent to petitioner, for the year ended March 31, 1960, on the basis of 49 percent to Stowe and 51 percent to petitioner, and for the year ended March 31, 1961, and years subsequent thereto, on the basis of 50 percent to Stowe and 50 percent to petitioner. Under the agreement the assets previously used by petitioner in his business as a certified public accountant were placed into the partnership, except the cash and accounts receivable, which petitioner retained. Petitioner assumed all liabilities existing as of March 31, 1956, and the partnership did not assume any of these liabilities.

Petitioner and Stowe also had an understanding that if either partner died, the other would buy from his estate his interest in the partnership. The interest was to be valued by the amount of cash, accounts receivable, and fixed assets, plus annual fees based on the amount of such fees for the 12 months immediately preceding the partner's death. In recognition of this understanding, petitioner and Stowe each bought an insurance policy on the other's life in order to have available the funds to discharge the obligation of the purchase of the other partner's interest should the other die.

The value of an accounting practice is frequently expressed in terms of 1 year's gross fees. For the calendar year 1955 the gross fees and net profits of petitioner's accounting business were $38,124.65 and

$16,111.95, respectively. The salary of Stowe for the year 1955 was $7,255.

Approximately one-half of petitioner's fees prior to the formation of the partnership was derived from general accounting services of the nature usually rendered by certified public accountants and the balance of his fees was derived from bookkeeping and posting services, commonly referred to as write-up work.

Prior to the formation of the partnership, petitioner, upon acquisition of clients for which he or his employees did bookkeeping or posting services, established books and records and procedures for such clients. These records and procedures were used in the conduct of the business of the partnership after its formation.

During 1955 petitioner employed in addition to Stowe three other individuals. Stowe and two of petitioner's other employees performed bookkeeping services and the third employee performed both bookkeeping and typing services. Total salaries paid by petitioner to his employees in 1955 were $14,759.50.

The tangible assets which petitioner transferred to the partnership consisted of office furniture and equipment with a book value and fair market value of $716.02.

In 1957 petitioner and Stowe engaged a law firm to put their oral agreement into written form. After discussions with petitioner and with Stowe as to the substance of their agreement, the attorneys prepared a draft agreement containing 17 paragraphs. The agreement was never signed by petitioner and Stowe because they were unable to agree as to the wording of the paragraph dealing with the amount which Stowe might withdraw from the partnership prior to petitioner's having been paid the entire $10,000, which Stowe agreed to pay him for a one-half interest in the business and the paragraphs dealing with disposition of clients' papers upon termination of the partnership, the notice to be given to the other party of either partner's intent to withdraw from the partnership and the payment to be made upon such withdrawal, the interest to be maintained by either partner in the partnership in the event of his disability over an extended period or temporarily absenting himself to engage in other work, and the payment to be made and the time to be allowed therefor by the surviving partner to the executors and administrators of the deceased partner if the partnership were terminated by the death of one of the partners. The other provisions incorporated in the draft were agreed to by each of the partners as being in accordance with their oral contract. The provision in the draft with respect to the $10,000 stated:

It is further understood and agreed that the said Hoyt Butler does hereby convey to the said J. Edward Stowe a one-half interest in said business for and in consideration of the agreement on the part of the said J. Edward Stowe to pay to the said Hoyt Butler the sum of $10,000.00, which said sum is to be payable in accordance with a schedule hereinafter set out. * * *

The provision as to the division of income of the partnership was also set forth in the proposed draft and was in accordance with the terms as heretofore set forth as being the oral agreement of the parties.

Petitioner was desirous of selling Stowe a one-half interest in his accounting business and forming a partnership with Stowe primarily for two reasons. One was that petitioner was suffering from a back ailment which, at the time he formed the partnership with Stowe, he believed to be arthritis. Petitioner's back ailment caused him to experience difficulty in sitting for long periods. The other primary reason for petitioner's desire to form a partnership with Stowe was that petitioner's business had expanded to the point that he felt it necessary to have someone to share the responsibility of the business who had a proprietary interest therein. Petitioner was willing to accept $10,000 from Stowe in payment for a one-half interest in the business which the parties considered to be worth $20,000 (one-half of the $40,000 total value) since he considered Stowe to have a value to the firm due to his approximately 7 years of employment therewith greater than a person who might come into the firm without previous contact therewith. Petitioner felt that Stowe's value to the firm should be considered in setting the consideration for the conveyance of a one-half interest in the business to Stowe. Petitioner considered that he should receive more than 50 percent of the profits of the partnership for the first 4 years in recognition of the greater worth of his work to the firm because of his experience as an accountant being over a longer period than Stowe's. Stowe had received his certificate as a certified public accountant from the State of North Carolina early in 1956.

During each of the calendar years 1959 and 1960 petitioner received $2,500 of the $10,000 Stowe had agreed to pay him and during 1961 received $1,500 of that amount. On his Federal income tax returns for the years 1959, 1960, and 1961 petitioner reported as long-term capital gain the amounts of $2,410.50, $2,410.50, and $1,446.30, respectively, which were arrived at by reducing the total payments he received under his agreement with Stowe in each of these years by amounts obtained by multiplying such payments by the percentages that one-half of the book value of the tangible assets was to $10,000. Petitioner included one-half of the amounts of the capital gain reported in his taxable income for each year. The parties agree that the total amounts as reported by petitioner are the correct amounts of the payments under petitioner's agreement with Stowe attributable to something other than the physical assets of petitioner's accounting business.

Respondent in his notice of deficiency increased petitioner's reported net income by the one-half of the reported gain on the sale of his

accounting business which petitioner had not included in his taxable income, stating that petitioner had not shown that the gain qualified as long-term capital gain as defined in the Internal Revenue Code of 1954.

OPINION

Respondent takes the position that when an individual practicing a profession as a sole proprietor forms a partnership with another, transferring to the other an interest in his existing practice, such individual does not make a sale or exchange of goodwill irrespective of the amount of goodwill which he has developed in his practice or the terminology used in the agreement transferring to the other an interest in the practice.[1]  Respondent contends that any payment received by such a professional practitioner, except the portion properly allocable to the physical assets used in the practice, is ordinary income.

Respondent argues that when a person engaged in the practice of a profession takes in a partner any payment he receives in excess of that for an interest in the tangible assets transferred to the partnership is received either for the relinquishment of rights to receive or-

---

[1] This position is based on Rev. Rul. 64–235, 1964–2 C.B. 18, which states in part as follows:

"Further consideration has been given to Revenue Rulings 57–480, C.B. 1957–2, 47, and 60–301, C.B. 1960–2, 15, which set forth the views of the Internal Revenue Service with respect to the existence of salable goodwill in professional firms.

"Revenue Ruling 57–480, as clarified by Revenue Ruling 60–301, holds that no portion of the sale price of a professional practice, or any other business, which is dependent solely upon the professional skill or other characteristics of the owner may be treated as proceeds from the sale of goodwill.  The revenue rulings also hold that, where a business does not depend exclusively on the personal attributes of the owner, salable goodwill may exist, depending upon the facts and circumstances.

"In disposing of cases involving the sale of an entire professional practice, the extent to which the proceeds of sale can be allocated to goodwill will be determined on the facts rather than by whether the business is, or is not, dependent solely upon the professional skill or other personal characteristics of the owner.

"In the cases of *Denton J. Rees, et ux.* v. *United States*, 187 Fed. Supp. 924 (1960), affirmed per curiam, 295 Fed. (2d) 817 (1961), and *Malcolm J. Watson, et ux.* v. *Commissioner*, 35 T.C. 203 (1960), nonacquiescence, page 9, this Bulletin, the issue was whether amounts paid to a professional man upon the admission of partners to his practice were to be taxed as capital gain.  In both cases, the incoming partners purchased an interest in the physical assets used in the practice and made certain additional payments which were attributed by the recipient-taxpayers to the sale of goodwill and thus were treated as capital gains.  It is the view of the Service that, in upholding this treatment, the *Rees* and *Watson* cases are erroneous and inconsistent with the decision of the United States Circuit Court of Appeals, Sixth Circuit, in the case of *E. C. O'Rear* v. *Commissioner*, 80 Fed. (2d) 473 (1935), affirming 28 B.T.A. 698 (1933).  See, in this regard, Revenue Ruling 62–114, C.B. 1962–2, 15.

"The *O'Rear* case held that similar payments received by a professional practitioner upon the admission of partners to his practice represented consideration for the relinquishment of his right to part of the future earnings of the practice.  Under the anticipatory assignment of income principle, these payments were held taxable as ordinary income.  The court noted that the taxpayer would continue to enjoy the benefit of whatever goodwill he had established and thus had not effected a disposition of that asset. * * *

"The Service will continue to follow the *O'Rear* case as a precedent in disposing of similar cases.  This position is consistent with the statement in Revenue Ruling 57–480, that where a professional man merely takes in partners rather than transferring his entire practice, he cannot be regarded as having made a sale of goodwill within the meaning of the Code provisions relating to capital gain or loss."

dinary income in the future, or present payment for future services or for a combination of the two. Respondent contends that to the extent the consideration is not for an interest in tangible assets there is no basis for treating the amount as capital gain. Respondent states that when an individual takes a partner into his professional firm he does not dispose of any part of the goodwill of the business but retains it and that therefore there has been no sale or exchange of goodwill, relying on such cases as *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958), and *Corn Products Co.* v. *Commissioner*, 350 U.S. 46 (1955) holding that the capital gains provision of the revenue laws should be strictly construed.

Respondent does not contend that goodwill is not a capital asset or that a professional person does not have salable goodwill connected with his practice. He does not contend that there was not goodwill connected with petitioner's business and that this goodwill had not been held by petitioner for a sufficient time to cause any gain on the sale thereof to be long-term capital gain. His entire argument is the contention that a professional person who forms a partnership with another cannot make a sale or exchange of the goodwill since he retains an interest in the partnership. Respondent contends that the case of *E. C. O'Rear*, 28 B.T.A. 698 (1933), affd. 80 F. 2d 473 (C.A. 6, 1935), specifically so holds and that our holding in *Malcolm J. Watson*, 35 T.C. 203 (1960), and the holding of the District Court in *Rees* v. *United States*, 187 F. Supp. 924 (D. Ore. 1960), affirmed per curiam 295 F. 2d 817 (C.A. 9, 1961), are legally erroneous. In *Malcolm J. Watson, supra,* we held that a certified public accountant who entered into a contract for the sale of his accounting practice to two other persons with whom he formed a partnership terminable in 10 years at which time the taxpayer's entire interest would be transferred to the other two persons, sold goodwill and was entitled to treat as capital gain the excess of the amount received under the contract over his basis in the business assets. We distinguished the case of *E. C. O'Rear, supra,* on a factual basis.[2] We pointed out that in *Rodney B. Horton*, 13 T.C. 143 (1949), the majority opinion held that a certified public accountant who was operating as a sole proprietor realized capital gain upon the sale of his practice to the extent of the

---

[2] *Malcolm J. Watson,* 35 T.C. 203, 215 (1960) :

"If the respondent relies upon the *O'Rear* case as authority for his position, as he appears to do, he is in error. Our conclusion in *O'Rear* was that the petitioner there did not prove that he had any vendible goodwill since all he had was his own skill and ability which he could not transfer, as property to others, piecemeal or otherwise, and further that the contract did not purport to sell goodwill, if it had in fact existed. We have reached a different factual conclusion, however, in two other cases. *Rodney B. Horton* and *Richard S. Wyler*, both *supra*. Where there exists vendible goodwill, it is an asset, albeit an intangible one, separate and apart from the personal skills and ability of the transferor. Gain realized on the sale of this asset is capital gain, regardless of whether the transferor continues, as a partner, in active practice with the purchasers. *Richard S. Wyler, supra.*"

portion of the purchase price attributable to the transfer of the business goodwill, while the dissenting opinion was based on the view of the dissenters that the conclusion of the majority was in conflict with *E. C. O'Rear*, *supra*. In *Richard S. Wyler*, 14 T.C. 1251 (1950), we held that a payment received by the taxpayer there involved from an accounting firm as the purchase price for his accounting practice was taxable as capital gain, rejecting respondent's argument based on *E. C. O'Rear*, *supra*. In so holding we distinguished *E. C. O'Rear*, stating that in the *O'Rear* case we had held that the agreements were not contracts for the sale of goodwill.

Although respondent does not contend that there is any distinction in *Malcolm J. Watson*, *supra*, and the instant case, there is a factual difference in the *Watson* case and the instant case. In the contract in the *Watson* case there was not only a specific provision for the present sale of a 45-percent interest in the practice, including its goodwill, but also a specific agreement that the taxpayer would sell and the other parties to the contract would purchase the other 55-percent interest after 10 years.[3] The oral agreement in the instant case makes no provision for the transfer of the remaining interest in petitioner's accounting practice. However, we do not consider the factual differences in the *Watson* case and the instant case to be sufficiently substantial to justify a different legal result.[4] We agree with respondent that in order to hold in accordance with his contentions in the instant case, it would be necessary to overrule our holding in *Malcolm J. Watson*, *supra*. In the *Watson* case the sale was only of a 45-percent interest in the accounting practice. The legal consequences of this sale should not be controlled by the fact that the agreement also included a contract to sell the remaining interest at the end of 10 years.

We do not agree with respondent that a legal distinction should be made between a situation where a professional person transfers his entire interest in a practice to another and a situation where he transfers only a portion of his interest, retaining the other and forming a partnership with the person to whom the transfer is made. Neither do we agree with respondent's contention that as a matter of law an interest in the goodwill of a professional practice may not be sold where the transferor of that interest remains as a partner with the purchaser and thus continues to benefit from the goodwill established

---

[3] In the article "The Tax Treatment of a Disposition of Professional Good Will," Weiss, 73 Yale L.J., 1158, 1171 (1964), the situation in *Malcolm J. Watson*, 35 T.C. 203 (1960), is considered as a "transitional arrangement." The article concludes that the formation of a partnership as such cannot be accompanied by a sale of goodwill (at 1167, 1184) specifically referring to *O'Rear* v. *Commissioner*, 80 F. 2d 473 (C.A. 6, 1935), at page 1184.

[4] In *Malcolm J. Watson*, 35 T.C. 203, 215 (1960), we did refer to the sale of the "whole" of the goodwill stating:

"Given this intangible capital asset and a contract to sell the whole of it to purchasers for a present determined consideration and a future determinable consideration, the problem before us is whether gain realized upon the receipt of the present consideration is gain from the sale of a capital asset."

prior to the transfer of an interest in the practice. Prior to the transfer the transferor obtained the full benefit derived from the use of the intangible assets such as goodwill just as he did the full benefit derived from the use of the tangible assets.

Subsequent to the transfer, the transferor obtained the benefits from use by the business of the intangible asset, goodwill, and the tangible assets only to the extent of his proportionate interest in the partnership. The purchaser pays for the intangible asset, goodwill, just as he does for the tangible assets. Both are to him capital assets which will be used in the business in which he has purchased an interest to produce income of which he will receive the percentage to which he is entitled under the partnership agreement.

Since we conclude in the instant case that petitioner did make a sale of an interest in an intangible capital asset, goodwill, to Stowe, we might distinguish the case of *E. C. O'Rear, supra,* as we have in other cases on the ground that in that case we held no sale had been made of goodwill. However, there is dicta in *E. C. O'Rear,*[5] which is subject to the interpretation that upon the transfer of an interest in a business under an agreement whereby the transferor forms a partnership with the transferee there can be no sale or exchange of goodwill. We will not follow such an interpretation of the dicta in *E. C. O'Rear, supra,* but will follow our holding in *Malcolm J. Watson, supra,* that capital gain may result from the transfer by an individual of an interest in a professional practice including goodwill, even though the transferor simultaneously forms a partnership with the transferee for the continuation of the practice. Whether goodwill does exist as a capital asset of a sole proprietor and if so whether such goodwill was transferred are questions of fact in each case. In the instant case the facts show the existence of goodwill and the transfer of such goodwill to the partnership composed of petitioner and Stowe.

*Decision will be entered for petitioner.*

---

[5] In discussing this contract in *E. C. O'Rear*, 28 B.T.A. 698 (1933), affd. 80 F. 2d 473 (C.A. 6, 1935), we quoted the following provision of the contract (p. 699) :

"As further differential in division of fees and income of the firm business, due to the conceded excess value of good will and unearned fees of said O'Rear put into the firm, said Fowler agrees to pay said O'Rear Twenty-five ($25,000) thousand dollars * * *."

We stated at pages 700–701 :

"But the most damaging defect in the petitioner's argument is the fact that the portions of the agreement with which we are concerned do not even purport to be sales contracts. They do not have the effect of sales contracts. If the petitioner had any "good will" theretofore, obviously he disposed of none of it by entering into these contracts. Thus the provisions of the statutes relating to gain or loss upon the sale or disposition of property do not apply. He was not to refrain from practicing ; on the contrary, he was to use every talent and every asset which he had for practicing law successfully. The agreement recognized that he would contribute more to the success of the firm than the others and therefore he should be favored in some way in the compensation which he would receive. The desired result might have been accomplished by a provision that he should have more than one third of the annual earnings. Instead he agreed, in consideration of an immediate cash payment, to relinquish his right to a part of future earnings."